David M. Kaplan
**DAVID M. KAPLAN, Attorney at Law**
401 Penbrooke Dr., Bldg. 2, Ste. B
Penfield, New York 14526
Phone: (585) 330-2222
Facsimile: (585) 445-6767
Email*: dmkaplan@rochester.rr.com*

Michael R. Reese
George V. Granade
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone:     (212) 643-0500
Facsimile:      (212) 253-4272
Email:           *mreese@reesellp.com*
                    *ggranade@reesellp.com*

**KALIEL PLLC**
Jeffrey D. Kaliel (*pro hac vice* to be filed)
1875 Connecticut Ave. NW 10th Floor
Washington, D.C.  20009
Telephone: (202) 350-4783
*jkaliel@kalielpllc.com*

**TYCKO & ZAVAREEI LLP**
Hassan A. Zavareei (*pro hac vice* to be filed)
Andrea Gold (*pro hac vice* to be filed)
1828 L St NW, Suite 1000
Washington, DC 20036
Telephone: 202-973-0900

(*Additional Counsel on Signature Page*)

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SUSAN ROY**, on behalf of herself and all others similarly situated,<br>                     Plaintiff,<br>      v.<br>**ESL FEDERAL CREDIT UNION**,<br>                     Defendant. | Case No. 19-cv-6122<br><br>**CLASS ACTION** |

## **CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW the Plaintiff Susan Roy, by counsel, and for her Class Action Complaint against the Defendant, she alleges as follows:

## **INTRODUCTION**

1. This is a civil action seeking monetary damages, restitution and declaratory relief from Defendant, ESL Federal Credit Union ("ESL"), arising from the unfair and unconscionable assessment and collection of Non-Sufficient Funds Fees ("NSF Fees"), which ESL charges when it returns certain checking account debits unpaid.

2. Plaintiff Roy brings this action on behalf of herself and a class of all similarly situated consumers against ESL arising from the assessment of (a) $37 RI Fees despite the promise in ESL's fee schedule that RI Fees would be only $10; and (b) charging multiple $37 RI Fees on the same transaction, which is barred by the account contract and is deceptive.

3. In violation of its contract and reasonable consumer understanding, ESL often charges more than one RI Fee on the *same transaction*, even though the contract states—and reasonable consumers understand—that the same transaction can only incur a *single* RI Fee. These double and triple penalties crush accountholders already struggling to make ends meet.

4. Indeed, with this improper practice, ESL was able to rack up an astounding *$111 in RI Fees on a single $34.93 credit card payment transaction*—even though its contract with Ms. Roy permitted ESL to charge only a single RI Fee of $10.

5. This practice works to catch accountholders in an increasingly devastating cycle of bank fees.

6.      Ms. Roy and other ESL customers have been injured by ESL's practices. On behalf of herself and the putative class, Ms. Roy seeks damages, restitution and injunctive relief for ESL's breach of contract and violation of New York consumer protection law.

## JURISDICTION

7.      This Court has original jurisdiction over this putative class action lawsuit pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d)(2) & (6), because the aggregate sum of the claims of the members of each of the putative classes exceeds $5 million, exclusive of interest and costs, because Ms. Roy brings this action on behalf of proposed classes that are each comprised of over one hundred members, and because at least one of the members of each of the proposed classes is a citizen of a different state than ESL.

8.      Venue and personal jurisdiction are proper in this district because ESL is located in a county encompassed by this District.

## CLASS ACTION ALLEGATIONS

9.      Ms. Roy brings this action on behalf of themselves and all others similarly situated pursuant to Rule 23(a), 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

10.     The proposed classes are defined as:

> All ESL checking account holders in the United States who, during the applicable statute of limitations, were charged RI Fees in an amount greater than $10 (the "$10 RI Fee Class").

> All ESL checking account holders in the United States who, during the applicable statute of limitations, were charged multiple Returned Item Fees on the same item (the "Multiple RI Fee Class").

The classes are collectively referred to as the "Classes."

11. Ms. Roy reserves the right to modify or amend the definition of the proposed Classes before the Court determines whether certification is appropriate.

12. Excluded from the Classes are ESL, its parents, subsidiaries, affiliates, officers and directors, any entity in which ESL has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

13. The members of the Classes are so numerous that joinder is impractical. The Classes consist of thousands of members, the identity of whom is within the knowledge of and can be ascertained only by resort to ESL's records.

14. The claims of Ms. Roy are typical of the claims of the Classes in that she, like all Class members, was charged improper Returned Item Fees. Ms. Roy, like all Class members, has been damaged by ESL's misconduct in that she paid improper RI Fees. Furthermore, the factual basis of ESL's misconduct is common to all Class members, and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Classes.

15. There are numerous questions of law and fact common to the Classes and those common questions predominate over any questions affecting only individual Class members.

16. Among the questions of law and fact common to the Classes are whether ESL:

    a. Charged more than the amount promised for RI Fees;

    b. Charged multiple RI Fees on a single transaction;

    c. Breached its contract with consumers by charging multiple RI Fees on a single transaction or by charging more than $10;

    d. Breached the covenant of good faith and fair dealing by charging multiple RI Fees on a single transaction;

   e. Violated New York consumer protection law by charging multiple RI Fees on a single transaction;

   f. Whether Ms. Roy and the Class were damaged by Defendant's conduct and if so, the proper measure of damages.

17. Ms. Roy is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers and against financial institutions. Accordingly, Ms. Roy is an adequate representative and will fairly and adequately protect the interests of the Classes.

18. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of ESL, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class members will continue to suffer losses and ESL's misconduct will proceed without remedy. Moreover, given that the improper fees were assessed in an uniform manner, common issues predominate over any questions, to the extent there are any, over any questions affecting only individual members.

19. Even if Class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

## PARTIES

20.   Plaintiff Susan Roy is a natural person who is a citizen of New York and resides in Hamlin, New York. Ms. Roy has a personal checking account with ESL.

21.   Defendant ESL is a credit union with approximately $6.2 billion in assets. It is one of the largest credit unions in New York. ESL is headquartered in Rochester, New York and maintains branch locations across the state of New York. ESL's account holders are located primarily in New York but, on information and belief, many account holders of ESL are citizens of other states.

22.   Ms. Roy is informed and believes, and thereupon alleges, that at least one of the members of each of the proposed classes is a citizen of a state other than New York.

23.   Ms. Roy is informed and believes, and thereupon alleges, that numerous individuals who are citizens of other states and reside outside of New York are in fact members of ESL, and that many of those non-New York resident members are members of the proposed classes in this case.

24.   Even for accountholders who first opened an ESL account while they lived in New York, many now are citizens of states other than New York.  To this point, ESL recently boasted the following on its website: "With nearly 100 years of locally-owned history, ESL Federal Credit Union serves as a full-service financial institution to approximately 357,000 members world-wide."  *See* https://www.esl.org/about-us/esl-in-the-news/esl-pays-15-million-owners-dividend-to-members (last visited on February 4, 2019).  Upon information and belief, at least one of those persons is a member of the putative classes.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

A.   **Examples of ESL's Imposition of RI Fees on Ms. Roy**

25.   There are numerous instances in which ESL charged $37 RI Fees on transactions that it returned unpaid, and in which ESL charged multiple RI Fees on a single transaction.

26.   On November 23, 2018, Ms. Roy attempted a $34.93 transfer to PayPal via an Automated Clearing House ("ACH") transaction.

27.   ESL rejected payment of that transaction due to insufficient funds and charged Ms. Roy a $37 RI Fee for doing so.

28.   Six days later, on November 29, 2018, the same transaction was reprocessed for payment again, and again ESL rejected the transaction due to insufficient funds, and again charged Ms. Roy a $37 RI Fee.

29.   ESL expressly referred to this transaction on Ms. Roy's bank statements as a "RETRY PYMT," indicating even ESL understood this transaction to be another iteration of the same authorization for payment.

30.   Another month later, on December 31, 2018, the same transaction was reprocessed for payment yet again, and again ESL rejected the transaction due to insufficient funds and again charged Ms. Roy a $37 RI Fee for doing so.

31.   ESL expressly referred to this transaction on Ms. Roy's bank statements as a "RETRY PYMT," indicating even ESL understood this transaction to be another iteration of the same authorization for payment.

32.   In sum, *ESL charged Ms. Roy $111 in RI Fees to attempt to process a single $34.93 payment.*

33.   Ms. Roy took no affirmative action to reinitiate or resubmit the payment, which was reprocessed for payment repeatedly.

34.   Ms. Roy understood the payment to PayPal be a single transaction, capable at most of receiving a single RI Fee.

### B. The Fee Schedule States ESL Will Be Charge $10 for Returned Items, Not $37

35. According to ESL's Fee Schedule which is part of the binding account contract, the charge for Returned Items is $10:

| Returned Items | $10.00 |
|---|---|

ESL Federal Credit Union Fee Schedule, Attached hereto as Ex. 1.

36. The document thus promises that when an item is returned unpaid, ESL will charge a single $10 fee. In reality, ESL charges a $37 fee or a $29 fee, in violation of this promise.

37. While a different section of the Fee Schedule states that two different types of "Overdraft Fees" will cost $37, such provisions cannot apply to returned or unpaid items, since—by definition—they are not debited from account and can therefore never result in an "overdraft":

| Overdraft Fees | | |
|---|---|---|
| Overdraft/Insufficient Funds | | $37.00 |
| Overdraft/Uncollected Funds | | $37.00 |
| POS Overdraft (Purchase Amount) | $.01 - $5.00 | Free |
| | >$5.01 | $37.00 |

*Id.*

38. To the extent that ESL alleges that the RI Fee does not apply, its contract documents are ambiguous and as adhesion contracts should be be construed against ESL. For instance, the Savings and Checking Disclosure Terms and Account Agreement ("Account Agreement"), a copy of which is attached hereto as <u>Exhibit A</u>, states:

If a deposited item in a joint account is returned unpaid, an account is overdrawn or if we do not receive final payment on any transaction, all owners are liable jointly and severally to the credit union for the amount of the returned item, overdraft or unpaid amount and any charges, regardless of who initiated or benefitted from the transaction.

**C.     ESL May Not Charge More Than One RI Fee Per Item**

39.     ESL's Fee Schedule indicates that only a single RI Fee will be assessed per "item" that is returned due to insufficient funds.

40.     The same instruction for payment on an account cannot conceivably become a new "item" each time it is rejected for payment then reprocessed, especially when—as here—Ms. Roy took no action to resubmit them.

41.     There is zero indication anywhere in the account documents that the same "item" is eligible to incur *multiple* RI Fees.

42.     In fact, language in the Account Agreement makes this so:

29. ***ESL will not pay a check when funds are not available to cover it, and an overdraft fee will be assessed (refer to a Fee Schedule for the exact fee charged). We are only required to make one determination of the account balance.*** If that determination reveals insufficient available funds to pay the check or other item and you have requested CheckOK, unless prohibited by law and in our sole discretion, we may honor the check or other item and transfer the amount of overdraft from your regular Daily Dividend, Premier Money Maker or Money Maker Account; or if we have previously approved a Cash Reserve Account that is attached to your share draft account, we will honor checks drawn on insufficient funds and add the amount of the overdraft to your Cash Reserve Account up to your approved credit limit; or, we may honor checks, ESL Bill Pay transactions and reoccurring ACH debit transactions drawn on insufficient funds pursuant to our Courtesy Pay agreement (refer to the Courtesy Pay Section in this Agreement). ESL is not required to send you prior notice before a check is returned for insufficient funds. You may want to ensure that you are covered by taking advantage of our Cash Reserve or other account protection programs. For information regarding overdrawing Health Savings Accounts, please refer to the section above titled FOR HEALTH SAVINGS ACCOUNTS ONLY.

. . . .

45. You may make withdrawals or transfers from your account in any manner which is permitted by the credit union (such as check, ATM, in person, by mail, by telephone and automatic transfer, as applicable). Withdrawals are generally made first from finally collected funds and, unless prohibited by law or the credit union's funds availability policy, *ESL reserves the right to refuse to pay any check or other item drawn against uncollected funds, impose a fee for such item or both*. The credit union may pay checks or other items drawn upon your account (including those payable to the credit union or on which the credit union may be liable) in any order determined by the credit union, *even if paying a particular check or item results in an insufficient balance in your account* to pay one or more other items that otherwise could have been paid out of your account.

. . . .

**COURTESY PAY**

Pursuant to our commitment to provide valued service and benefits, *we may pay checks or other items/transactions ("Item" or "ltems"), which would cause your share draft account to have a negative (or further negative) balance (herein "overdraft")*, pursuant to the terms and conditions of this Agreement.

. . . .

You *will be notified of any nonsufficient funds Item that has been paid or returned*; however, you understand that ESL has no obligation to notify you before we pay or return any item. We may refuse to pay any overdrafts without first notifying you even though your account is in good standing and even if we have paid previous overdrafts.

. . . .

An Overdraft/Insufficient Funds fee will be charged to your share draft account, in accordance with our Fee Schedule, for each overdraft Item that is cleared on your share draft account. In addition, an Overdraft/Insufficient Funds fee will be charged by ESL for each "insufficient funds" item presented for payment and returned unpaid on a share draft account.

43.     Any conflicting language in the Account Agreement suggesting that a $37 overdraft fee would be charged must be construed against ESL.  Regardless, the above quoted provisions, and the remaining Account Agreement provisions, make clear that ESL did not authorize itself to charge multiple RI Fees on a single transaction.

44. In sum, ESL promises that one $10 RI Fee will be assessed per item, "check or other withdrawal," and these terms must mean all iterations of the same instruction for payment. As such, ESL breached the contract when it charged more than one fee per item.

45. Consistent with express representations in the contract, reasonable consumers understand any given authorization for payment to be one, singular "item," as that term is used in ESL's contract documents.

46. Upon information and belief, ESL has this same understanding in practice, since its systems code transactions in a way that alerts the credit union when the same item or transaction is being re-submitted for payment, *viz.*, as "RETRY PYMT."

47. The contract documents bar ESL from assessing multiple Returned Item Fees on the same item.

48. Financial institutions like ESL that employ this abusive practice know how to plainly and clearly disclose it. Indeed, other banks that do engage in this abusive practice disclose it expressly to their accountholders—something Defendant here never did.

49. For example, First Citizens Bank, a major institution in the Carolinas, engages in the same abusive practice as ESL, but at least expressly states:

> Because we may charge a service fee for an NSF item each time it is presented, **we may charge you more than one service fee for any given item**. All fees are charged during evening posting. When we charge a fee for NSF items, the charge reduces the available balance in your account and may put your account into (or further into) overdraft.

(emphasis added).

50. First Hawaiian Bank engages in the same abusive practices as Defendant, but at least currently discloses it in its online banking agreement, in all capital letters, as follows:

> YOU AGREE THAT MULTIPLE ATTEMPTS MAY BE MADE TO SUBMIT A RETURNED ITEM FOR PAYMENT AND THAT **MULTIPLE FEES MAY BE CHARGED TO YOU AS A RESULT OF A RETURNED ITEM AND RESUBMISSION**.

(emphasis added).

51.     ESL provides no such disclosure, and in so doing, deceives its accountholders.

**D.    ESL Abuses Its Discretion**

52.     To the extent the account documents do not explicitly bar the polices described above, ESL exploits contractual discretion to the detriment of accountholders and breaches good faith and fair dealing when it uses these policies.

53.     For example, it was bad faith and totally outside Plaintiff Roy's reasonable expectations for the credit union to use its discretion to assess $74 in fees for a single $34.93 PaypPal transaction.

54.     By not providing clarity or stating whether or not it may charge more than on RI Fee per item, ESL provides itself discretion to refuse to re-submit transactions that are initially rejected. It abuses that discretion to repeatedly accepting resubmitted transactions and charging a fee each time.

55.     Additionally, ESL grants itself discretion to charge—or not to charge—a RI Fee on a given transaction. When it charges more than one RI Fee on a given item or transaction, ESL engages in bad faith and contradicts reasonable consumer expectations.

## FIRST CLAIM FOR RELIEF
## Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing
### (On Behalf of Plaintiff and the Classes)

56. The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

57. Ms. Roy and ESL have contracted for bank account deposit, checking, ATM, and debit card services. That contract provided that ESL will charge $10 for an RI Fee and does not permit ESL to charge multiple RI Fees for the same item.

58. Under the laws of New York, good faith is an element of every contract pertaining to the assessment of overdraft fees. Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

59. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified. A failure to act in good faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of violations of good faith and fair dealing include evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

60. ESL has breached the covenant of good faith and fair dealing in its account agreement with customers by charging multiple RI Fees for the same item.

61. ESL also breached the express terms of its contract with Ms. Roy and the Classes by charging greater than $10 for RI Fees.

62. Ms. Roy and members of the Classes have performed all, or substantially all, of the obligations imposed on them under the contract.

63. Ms. Roy and members of the Classes have sustained damages as a result of ESL's breach of the contract.

## SECOND CLAIM FOR RELIEF
### Violations of New York Consumer Protection Laws
(On Behalf of Plaintiff and the New York Subclass)

64. The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

65. This claim is asserted on behalf of the subclass of ESL customers who are New York residents and enjoy the protections of Article 22-A of the New York General Business Law, the Consumer Protection from Deceptive Acts and Practices Law, N.Y. Gen. Bus. Law §§ 349 *et seq.*, which prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. Gen. Bus. Law § 349(a).

66. ESL's policies and practices complained of herein were and are consumer-oriented, in that they affect all consumers who maintain checking accounts with ESL.

67. The complained-of policies and practices were and are misleading in a material respect, because ESL promised to charge RI Fees in the amount of $10, and Ms. Roy and the Classes did not agree to pay more than one RI Fee per transaction.

68. Ms. Roy and members of the New York Subclass were injured as a result of ESL's policies and practices, in that their accounts were debited by ESL in violation of their agreements with ESL.

69. ESL's actions were willful and knowing.

70. As redress for ESL's repeated and ongoing violations of these consumer protection statutes, Ms. Roy and members of the New York Subclass are each entitled to (a) injunctive relief, and (b) three times actual damages (up to $1,000.00). *See* N.Y. Gen. Bus. Law § 349(h).

44. Due to ESL's violation of Regulation E (12 C.F.R. § 1005.17), Ms. Roy and members of the Class are entitled to actual and statutory damages, as well as attorneys' fees and costs of suit pursuant to 15 U.S.C.A. § 1693m.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Roy and members of the National Class and the New York Subclass demand a jury trial on all claims so triable and judgment as follows:

45. Declaring ESL's RI Fee policies and practices to be wrongful, unfair and unconscionable;

46. Restitution of all RI Fees paid to ESL by Ms. Roy and the Class above $10 per transaction;

47. For each member of the National Class, actual damages in an amount according to proof;

48. For each member of the New York Subclass, the lesser of (a) three times actual damages in an amount according to proof, or (b) $1,000;

49. Pre-judgment interest at the maximum rate permitted by applicable law;

50. Costs and disbursements assessed by Ms. Roy in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

51. Such other relief as this Court deems just and proper.

**TRIAL BY JURY IS DEMANDED**

Plaintiff respectfully demands a trial by jury on all issues so triable.

Dated: February 15, 2019          Respectfully submitted,

*/s/ Michael R. Reese*
Michael R. Reese
George V. Granade
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone:   (212) 643-0500
Facsimile:    (212) 253-4272
Email:       *mreese@reesellp.com*
              *ggranade@reesellp.com*

David M. Kaplan
**DAVID M. KAPLAN, Attorney at Law**
401 Penbrooke Dr., Bldg. 2, Ste. B
Penfield, New York 14526
Phone: (585) 330-2222
Email*: dmkaplan@rochester.rr.com*

**KALIEL PLLC**
Jeffrey D. Kaliel (*pro hac vice* to be filed)
1875 Connecticut Ave. NW 10th Floor
Washington, D.C.  20009
Telephone: (202) 350-4783
*jkaliel@kalielpllc.com*

**TYCKO & ZAVAREEI LLP**
Hassan A. Zavareei (*pro hac vice* to be filed)
Andrea Gold (*pro hac vice* to be filed)
1828 L St NW, Suite 1000
Washington, DC 20036
Telephone: 202-973-0900

**KOPELOWITZ OSTROW FERGUSON WEISELBERG GILBERT**
Jeff Ostrow (*pro hac vice* to be filed)
Jonathan M. Streisfeld (*pro hac vice* to be filed)
One W. Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Telephone: 954-525-4100

*Counsel for Plaintiff and the Proposed Classes*