## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **SUSAN ROY**, on behalf of herself and all others similarly situated, | Case No. 6:19-cv-06122 |
| Plaintiff, | |
| v. | **CLASS ACTION** |
| **ESL FEDERAL CREDIT UNION**, | |
| Defendant. | |

### FIRST AMENDED CLASS ACTION COMPLAINT
### AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff Susan Roy, by counsel, and for her First Amended Class Action Complaint against the Defendant, alleges as follows:

### INTRODUCTION

1.      This is a civil action seeking monetary damages, restitution and declaratory relief from Defendant, ESL Federal Credit Union ("ESL"), arising from the unfair and unconscionable assessment and collection of Returned Item Fees ("RI Fees"), which ESL charges when it returns certain checking account debits unpaid, as well as the unfair and unconscionable assessment and collection of Overdraft Fees ("OD Fees"), which ESL charges when it pays certain checking account debits.

2.      Plaintiff Roy brings this action on behalf of herself and a class of all similarly situated consumers against ESL arising from the assessment of (a) $37 RI Fees despite the promise in ESL's fee schedule that RI Fees would be only $10; (b) charging multiple $37 RI Fees on the same transaction, which is barred by the account contract and is deceptive; and (c) $37 OD Fees on transactions that did not actually overdraw the account.

3.      In violation of its contract and reasonable consumer understanding, ESL often charges more than one RI Fee on the *same transaction*, even though the contract states—and

reasonable consumers understand—that the same transaction can only incur a *single* RI Fee. These double and triple penalties crush accountholders already struggling to make ends meet.

4.      Indeed, with this improper practice, ESL was able to rack up an astounding *$111 in RI Fees on a single $34.93 ACH transaction*—even though its contract with Ms. Roy permitted ESL to charge only a single RI Fee of $10.

5.      Further in violation of its contract and reasonable consumer understanding, ESL also charges OD Fees on transactions which did not actually overdraw the account.

6.      The plain language of ESL's adhesion contracts specifically promises that ESL will only charge OD Fees on transactions with insufficient funds to cover a given transaction when such transactions cause the account to have a negative balance.

7.      The Savings and Checking Disclosure Terms and Account Agreement ("Account Agreement") between ESL and Ms. Roy and its other accountholders contains a promise that ESL will not charge OD Fees for transactions when there is sufficient money in the account to pay for the transaction.  The Account Agreement states that ESL will only assess OD Fees on transactions "which would cause your share draft account to have a negative (or further negative) balance (herein "overdraft"), pursuant to the terms and conditions of this Agreement." *See* Exhibit 2 attached hereto.

8.      The Account Agreement also promises that OD Fees will be charged only "for each overdraft item" with "overdraft" having previously been defined as a negative account balance:  "An Overdraft/Insufficient Funds fee will be charged to your share draft account, in accordance with our Fee Schedule, for each overdraft Item that is cleared on your share draft account." *See id*.

9.      The Account Agreement does not define "balance."

10.     Indeed, according to the monthly account statements prepared by ESL, Ms. Roy's account balance was not negative when she was charged OD Fees on at least two transactions. Thus, the transactions did not actually overdraw Ms. Roy's account and ESL charged her hefty OD Fees anyway.

11.     These practices work to catch accountholders in an increasingly devastating cycle of bank fees.

12.     Ms. Roy and other ESL customers have been injured by ESL's practices. On behalf of herself and the putative class, Ms. Roy seeks damages, restitution and injunctive relief for ESL's breach of contract and violation of New York consumer protection law.

## JURISDICTION

13.     This Court has original jurisdiction over this putative class action lawsuit pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d)(2) & (6), because the aggregate sum of the claims of the members of each of the putative classes exceeds $5 million, exclusive of interest and costs, Ms. Roy brings this action on behalf of proposed classes that are each comprised of over one hundred members, and at least one of the members of each of the proposed classes is a citizen of a different state than ESL.

14.     Venue and personal jurisdiction are proper in this district because ESL is located in a county encompassed by this District.

## CLASS ACTION ALLEGATIONS

15.     Ms. Roy brings this action on behalf of herself and all others similarly situated pursuant to Rule 23(a), 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

3

16.     The proposed classes are defined as:

All ESL checking account holders in the United States who, during the applicable statute of limitations, were charged RI Fees in an amount greater than $10 (the "$10 RI Fee Class").

All ESL checking account holders in the United States who, during the applicable statute of limitations, were charged multiple Returned Item Fees on the same item (the "Multiple RI Fee Class").

All ESL checking account holders in the United States who, during the applicable statute of limitations, were charged OD Fees on transactions that did not overdraw their checking accounts (the "OD Fee Class").

All ESL checking account holders in the state of New York who, during the applicable statute of limitations, were charged RI Fees in an amount greater than $10 (the "$10 RI Fee New York Subclass").

All ESL checking account holders in the state of New York who, during the applicable statute of limitations, were charged multiple Returned Item Fees on the same item (the "Multiple RI Fee New York Subclass").

All ESL checking account holders in the state of New York who, during the applicable statute of limitations, were charged OD Fees on transactions that did not overdraw their checking accounts (the "OD Fee New York Subclass").

The classes are collectively referred to as the "Classes."

17.     Ms. Roy reserves the right to modify or amend the definition of the proposed Classes before the Court determines whether certification is appropriate.

18.     Excluded from the Classes are ESL, its parents, subsidiaries, affiliates, officers and directors, any entity in which ESL has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

19.     The members of the Classes are so numerous that joinder is impractical.  The Classes consist of thousands of members, the identity of whom is within the knowledge of and can be ascertained only by resort to ESL's records.

20.     The claims of Ms. Roy are typical of the claims of the Classes in that she, like all Class members, was charged improper RI Fees and OD Fees. Ms. Roy, like all Class members, has been damaged by ESL's misconduct in that she paid improper RI Fees and OD Fees. Furthermore, the factual basis of ESL's misconduct is common to all Class members, and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Classes.

21.     There are numerous questions of law and fact common to the Classes and those common questions predominate over any questions affecting only individual Class members.

22.     Among the questions of law and fact common to the Classes are whether ESL:

a.     Charged more than the amount promised for RI Fees;

b.     Charged multiple RI Fees on a single transaction;

c.     Charged OD Fees on transactions when those transactions did not overdraw accounts;

d.     Breached its contract with consumers by charging multiple RI Fees on a single transaction or by charging more than $10 RI Fees;

e.     Breached the covenant of good faith and fair dealing by charging multiple RI Fees on a single transaction or by charging more than $10 RI Fees;

f.     Violated New York consumer protection law by charging multiple RI Fees on a single transaction;

g.     Violated New York consumer protection law by charging more than $10 for a RI Fee;

h.     Breached its contract with consumers by charging OD Fees on transactions when those transactions did not overdraw accounts;

      i.      Breached the covenant of good faith and fair dealing by charging OD Fees on transactions when those transactions did not overdraw accounts;

      j.      Violated New York consumer protection law by charging OD Fees on transactions when those transactions did not overdraw accounts;

      k.      Whether Ms. Roy and the Classes were damaged by Defendant's conduct and if so, the proper measure of damages.

23.      Ms. Roy is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers and against financial institutions.  Accordingly, Ms. Roy is an adequate representative and will fairly and adequately protect the interests of the Classes.

24.      A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of ESL, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class members will continue to suffer losses and ESL's misconduct will proceed without remedy.  Moreover, given that the improper fees were assessed in a uniform manner, common issues predominate over any questions, to the extent there are any, affecting only individual members.

25.      Even if Class members themselves could afford such individual litigation, the court system could not.  Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard

which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

## PARTIES

26.     Plaintiff Susan Roy is a natural person who is a citizen of New York and resides in Hamlin, New York. Ms. Roy has a personal checking account with ESL.

27.     Defendant ESL is a credit union with approximately $6.2 billion in assets. It is one of the largest credit unions in New York. ESL is headquartered in Rochester, New York and maintains branch locations across the state of New York. ESL's accountholders are located primarily in New York but, on information and belief, many accountholders of ESL are citizens of other states.

28.     Ms. Roy is informed and believes, and thereupon alleges, that at least one of the members of each of the proposed classes is a citizen of a state other than New York.

29.     Ms. Roy is informed and believes, and thereupon alleges, that numerous individuals who are citizens of other states and reside outside of New York are in fact members of ESL, and that many of those non-New York resident members are members of the proposed Classes in this case.

30.     Even for accountholders who first opened an ESL account while they lived in New York, many now are citizens of states other than New York.  To this point, ESL recently boasted the following on its website: "With nearly 100 years of locally-owned history, ESL Federal Credit Union serves as a full-service financial institution to approximately 357,000 members world-wide." *See https://www.esl.org/about-us/esl-in-the-news/esl-pays-15-million-owners-dividend-to-members* (last visited on September 27, 2019).  Upon information and belief,

at least one of those persons is a member of the putative Classes.

**FACTUAL BACKGROUND AND GENERAL ALLEGATIONS**

A.    **Examples of ESL's Imposition of RI Fees on Ms. Roy**

31.    There are numerous instances in which ESL charged $37 RI Fees on transactions that it returned unpaid, and in which ESL charged multiple RI Fees on a single transaction.

32.    On November 23, 2018, Ms. Roy attempted a $34.93 transfer to PayPal via an Automated Clearing House ("ACH") transaction.

33.    ESL rejected payment of that transaction due to insufficient funds and charged Ms. Roy a $37 RI Fee for doing so.

34.    Six days later, on November 29, 2018, the same transaction was reprocessed for payment again, and again ESL rejected the transaction due to insufficient funds, and again charged Ms. Roy a $37 RI Fee.

35.    ESL expressly referred to this transaction on Ms. Roy's bank statements as a "RETRY PYMT," indicating even ESL understood this transaction to be another iteration of the same authorization for payment.

36.    One month later, on December 31, 2018, the same transaction was reprocessed for payment yet again, and again ESL rejected the transaction due to insufficient funds and again charged Ms. Roy a $37 RI Fee for doing so.

37.    ESL expressly referred to this transaction on Ms. Roy's bank statements as a "RETRY PYMT," indicating even ESL understood this transaction to be another iteration of the same authorization for payment.

38.    In sum, *ESL charged Ms. Roy $111 in RI Fees to attempt to process a single $34.93 payment.*

8

39.    Ms. Roy took no affirmative action to reinitiate or resubmit the payment, which was reprocessed for payment repeatedly.

40.    Ms. Roy understood the payment to PayPal be a single transaction, capable at most of receiving a single RI Fee.

**B.     The Fee Schedule States ESL Will Be Charged $10 for Returned Items, Not $37**

41.    According to ESL's "Fee Schedule" which is part of the binding account contract, the charge for Returned Items is $10:

| Returned Items | $10.00 |
|---|---|

ESL Federal Credit Union Fee Schedule, attached hereto as Exhibit 1.

42.    The document thus promises that when an item is returned unpaid, ESL will charge a single $10 fee.  In reality, ESL charges a $37 fee or a $29 fee, in violation of this promise.

43.    While a different section of the Fee Schedule states that two different types of "Overdraft Fees" will cost $37, such provisions cannot apply to returned or unpaid items, since—by definition—they are not debited from account and can therefore never result in an "overdraft":

| Overdraft Fees | | |
|---|---|---|
| Overdraft/Insufficient Funds | | $37.00 |
| Overdraft/Uncollected Funds | | $37.00 |
| POS Overdraft (Purchase Amount) | $.01 - $5.00 | Free |
| | >$5.01 | $37.00 |

*Id.*

44.    To the extent that ESL alleges that the RI Fee does not apply, its contract

documents are ambiguous and as adhesion contracts should be construed against ESL.    For

instance, the Account Agreement, states:

> If a deposited item in a joint account is returned unpaid, an account is overdrawn
> or if we do not receive final payment on any transaction, all owners are liable
> jointly and severally to the credit union for the amount of the returned item,
> overdraft or unpaid amount and any charges, regardless of who initiated or
> benefitted from the transaction.

*See* Exhibit 2.

**C.     ESL May Not Charge More Than One RI Fee Per Item**

45.     ESL's Fee Schedule indicates that only a single RI Fee will be assessed per

"item" that is returned due to insufficient funds.

46.     The same instruction for payment on an account cannot conceivably become a

new "item" each time it is rejected for payment then reprocessed, especially when—as here—

Ms. Roy took no action to resubmit them.

47.     There is zero indication anywhere in the account documents that the same "item"

is eligible to incur *multiple* RI Fees.

48.     In fact, language in the Account Agreement makes this so:

> 29. ***ESL will not pay a check when funds are not available to cover it, and an***
> ***overdraft fee will be assessed (refer to a Fee Schedule for the exact fee charged).***
> ***We are only required to make one determination of the account balance.*** If that
> determination reveals insufficient available funds to pay the check or other item
> and you have requested CheckOK, unless prohibited by law and in our sole
> discretion, we may honor the check or other item and transfer the amount of
> overdraft from your regular Daily Dividend, Premier Money Maker or Money
> Maker Account; or if we have previously approved a Cash Reserve Account that is
> attached to your share draft account, we will honor checks drawn on insufficient
> funds and add the amount of the overdraft to your Cash Reserve Account up to
> your approved credit limit; or, we may honor checks, ESL Bill Pay transactions
> and reoccurring ACH debit transactions drawn on insufficient funds pursuant to
> our Courtesy Pay agreement (refer to the Courtesy Pay Section in this Agreement).
> ESL is not required to send you prior notice before a check is returned for
> insufficient funds. You may want to ensure that you are covered by taking
> advantage of our Cash Reserve or other account protection programs. For

information regarding overdrawing Health Savings Accounts, please refer to the section above titled FOR HEALTH SAVINGS ACCOUNTS ONLY.

. . . .

45. You may make withdrawals or transfers from your account in any manner which is permitted by the credit union (such as check, ATM, in person, by mail, by telephone and automatic transfer, as applicable). Withdrawals are generally made first from finally collected funds and, unless prohibited by law or the credit union's funds availability policy, ***ESL reserves the right to refuse to pay any check or other item drawn against uncollected funds, impose a fee for such item or both***. The credit union may pay checks or other items drawn upon your account (including those payable to the credit union or on which the credit union may be liable) in any order determined by the credit union, ***even if paying a particular check or item results in an insufficient balance in your account*** to pay one or more other items that otherwise could have been paid out of your account.

. . . .

**COURTESY PAY**

Pursuant to our commitment to provide valued service and benefits, ***we may pay checks or other items/transactions ("Item" or "Items"), which would cause your share draft account to have a negative (or further negative) balance (herein "overdraft")***, pursuant to the terms and conditions of this Agreement.

. . . .

You ***will be notified of any nonsufficient funds Item that has been paid or returned***; however, you understand that ESL has no obligation to notify you before we pay or return any item. We may refuse to pay any overdrafts without first notifying you even though your account is in good standing and even if we have paid previous overdrafts.

. . . .

An Overdraft/Insufficient Funds fee will be charged to your share draft account, in accordance with our Fee Schedule, for each overdraft Item that is cleared on your share draft account. In addition, an Overdraft/Insufficient Funds fee will be charged by ESL for each "insufficient funds" item presented for payment and returned unpaid on a share draft account.

49.     Any conflicting language in the Account Agreement suggesting that a $37 RI Fee

would be charged must be construed against ESL.  Regardless, the above quoted provisions, and

the remaining Account Agreement provisions, make clear that ESL did not authorize itself to charge multiple RI Fees on a single transaction.

50.     In sum, ESL promises that one $10 RI Fee will be assessed per item, "check or other withdrawal," and these terms must mean all iterations of the same instruction for payment. As such, ESL breached the contract when it charged more than one RI Fee per item.

51.     Consistent with express representations in the contract, reasonable consumers understand any given authorization for payment to be one, singular "item," as that term is used in ESL's contract documents.

52.     Upon information and belief, ESL has this same understanding in practice, since its systems code transactions in a way that alerts the credit union when the same item or transaction is being re-submitted for payment, *viz.*, as "RETRY PYMT."

53.     The contract documents bar ESL from assessing multiple Returned Item Fees on the same item.

54.     Financial institutions like ESL that employ this abusive practice know how to plainly and clearly disclose it.  Indeed, other financial institutions that do engage in this abusive practice disclose it expressly to their accountholders—something ESL here never did.

55.     For example, First Citizens Bank, a major institution in the Carolinas, engages in the same abusive practice as ESL, but at least expressly states:

> Because we may charge a service fee for an NSF item each time it is presented, **we may charge you more than one service fee for any given item**. All fees are charged during evening posting. When we charge a fee for NSF items, the charge reduces the available balance in your account and may put your account into (or further into) overdraft.

(emphasis added).

56.     First Hawaiian Bank engages in the same abusive practices as ESL, but at least

currently discloses it in its online banking agreement, in all capital letters, as follows:

> YOU AGREE THAT MULTIPLE ATTEMPTS MAY BE MADE TO SUBMIT A RETURNED ITEM FOR PAYMENT AND THAT **MULTIPLE FEES MAY BE CHARGED TO YOU AS A RESULT OF A RETURNED ITEM AND RESUBMISSION**.

(emphasis added).

57.     Central Pacific Bank, a leading bank in Hawai'i, states in its Fee Schedule under the "MULTIPLE NSF FEES" subsection: "Items and transactions (such as, for example, checks and electronic transactions/payments) returned unpaid due to insufficient/non-sufficient ("NSF") funds in your account, may be resubmitted one or more times for payment, and a $32 fee will be imposed on you each time an item and transaction resubmitted for payment is returned due to insufficient/nonsufficient funds."

58.     BP Credit Union likewise states: "Your account may be subject to a fee for each item regardless of whether we pay or return the item. We may charge a fee each time an item is submitted or resubmitted for payment; therefore, you may be assessed more than one fee as a result of a returned item and resubmission(s) of the returned item."

59.     ESL provides no such disclosure, and in so doing, deceives its accountholders.

**D.      ESL Account Documents Promise That It Will Only Charge OD Fees on Transactions That Actually Overdraw An Account**

60.     Plaintiff's checking account with ESL was, at all relevant times, governed by ESL's standardized Account Agreement, the material terms of which are drafted by ESL, amended by ESL from time to time at its convenience and complete discretion, and imposed by ESL on all of its customers.

61.     In plain, clear, and simple language, the contract documents discussing OD Fees promise that ESL will only charge OD Fees on transactions "which would cause your share draft

account to have a negative (or further negative) balance." Similarly, as alleged above: "Pursuant to our commitment to provide valued service and benefits, we may pay checks or other items/transactions ("Item" or "Items"), which would cause your share draft account to have a negative (or further negative) balance (herein "overdraft"), pursuant to the terms and conditions of this Agreement." *See* Exhibit 2 (emphasis added).

62.    ESL's contract further clearly promises that OD Fees will be charged only "for each overdraft item" with "overdraft" having previously been defined as a negative account balance:  "An Overdraft/Insufficient Funds fee will be charged to your share draft account, in accordance with our Fee Schedule, for each overdraft Item that is cleared on your share draft account." *See* Exhibit 2.

63.    Contrary to these promises, ESL's uniform policy and practice is to disregard the actual amount of money in the account or whether there is a negative balance and, instead, to assess OD Fees based on a manufactured balance that deducts holds placed on pending debit card transactions or deposits.

64.    By using this calculation—as opposed to the actual money in an accountholder's account—to determine whether to assess an OD Fee, ESL increases the number of OD Fees it assesses on its accountholders.

65.    This manufactured balance is not the official balance of the account and it is not the balance provided to accountholder's in their monthly statements from ESL.  As such, it is reasonable for Ms. Roy and accountholders like her to interpret and understand ESL's use of the term "balance" as the official balance in the account i.e. the actual money in the account without deductions for pending debit card transactions or holds on deposits.  Ms. Roy and class members could not reasonably have expected that ESL would assess OD Fees in this manner.

**E.      Examples of ESL's Imposition of OD Fees on Ms. Roy**

66.      ESL charged Ms. Roy $37 OD Fees on transactions that did not overdraw her account.  For example, on October 21, 2016, Ms. Roy was assessed an OD Fee in the amount of $37 for a loan payment of $293.22. This is despite the fact that, according to the bank statement issued by ESL, her account never went negative and always had sufficient funds to cover the transaction.

67.      In another example, on October 10, 2017, Ms. Roy was assessed an OD Fee in the amount of $37 for a credit card payment of $43.00. This is despite the fact that, according to the bank statement issued by ESL, her account never went negative and always had sufficient funds to cover the transaction.

**F.      ESL Abuses Its Discretion**

68.      To the extent the account documents do not explicitly bar the polices described above, ESL exploits contractual discretion to the detriment of accountholders and breaches good faith and fair dealing when it uses these policies.

69.      For example, it was bad faith and totally outside Plaintiff Roy's reasonable expectations for the credit union to use its discretion to assess $111 in fees for a single $34.93 PayPal transaction.

70.      By not providing clarity or stating whether or not it may charge more than one RI Fee per item, ESL provides itself discretion to refuse to re-submit transactions that are initially rejected. It abuses that discretion to repeatedly accepting resubmitted transactions and charging a fee each time.

71.      Additionally, ESL grants itself discretion to charge—or not to charge—a RI Fee on a given transaction. When it charges more than one RI Fee on a given item or transaction,

ESL engages in bad faith and contradicts reasonable consumer expectations.

72.     Moreover, it was bad faith and totally outside Plaintiff Roy's reasonable expectations for the credit union to use its discretion to assess OD Fees for transactions that did not actually overdraw her account.

73.     Additionally, ESL grants itself discretion to charge—or not to charge—an OD Fee on a given transaction. When it charges an OD Fee on transactions that do not actually overdraw an account, ESL engages in bad faith and contradicts reasonable consumer expectations.

74.     ESL acted in bad faith and outside reasonable consumer expectations when it assessed OD Fees when there was enough money in accountholders' accounts to cover the transactions and by using a manufactured account calculation to increase the number of OD Fees it could assess.

**FIRST CLAIM FOR RELIEF**
**Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing**
**(On Behalf of Plaintiff and the Classes)**

75.     The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

76.     Ms. Roy and ESL have contracted for bank account deposit, checking, ATM, and debit card services. That contract provided that ESL will charge $10 for an RI Fee and does not permit ESL to charge multiple RI Fees for the same item.  Moreover, the contract also does not permit ESL to charge OD Fees on transactions that do not actually overdraw an account.

77.     ESL's Account Agreement promised that ESL would assess OD Fees only on transactions "which would cause your share draft account to have a negative (or further negative) balance (herein "overdraft")" and also promises that OD Fees will be charged only "for each

overdraft item" with "overdraft" having previously been defined as a negative account balance: "An Overdraft/Insufficient Funds fee will be charged to your share draft account, in accordance with our Fee Schedule, for each overdraft Item that is cleared on your share draft account." *See* Exhibit 2.

78.      Nowhere in the Account Agreement did ESL state that it would deduct pending debit card transactions for purposes of determining a "negative account balance" when charging OD Fees.

79.      Under the laws of New York, good faith is an element of every contract pertaining to the assessment of OD Fees and RI Fees. Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

80.      Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified. A failure to act in good faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of violations of good faith and fair dealing include evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

81.      ESL has breached the covenant of good faith and fair dealing in its account agreement with customers by charging multiple RI Fees for the same item.

82.     ESL also breached the express terms of its contract with Ms. Roy and the Classes by charging greater than $10 for RI Fees.

83.     ESL has breached the covenant of good faith and fair dealing in its Account Agreement with customers by charging OD Fees on transactions that do not actually overdraw the account *i.e.* when there were sufficient actual funds in the account to cover the transaction.

84.     ESL also breached the express terms of its contract with Ms. Roy and the Classes by charging OD Fees on transactions that do not actually overdraw the account *i.e.* when there were sufficient actual funds in the account to cover the transaction.

85.     Ms. Roy and members of the Classes have performed all, or substantially all, of the obligations imposed on them under the contract.

86.     Ms. Roy and members of the Classes have sustained damages as a result of ESL's breach of the contract.

## SECOND CLAIM FOR RELIEF
### Violations of New York Consumer Protection Laws
#### (On Behalf of Plaintiff and the New York Subclasses)

87.     The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

88.     This claim is asserted on behalf of the subclasses of ESL customers who are New York residents and enjoy the protections of Article 22-A of the New York General Business Law, the Consumer Protection from Deceptive Acts and Practices Law, N.Y. Gen. Bus. Law §§ 349 *et seq.*, which prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. Gen. Bus. Law § 349(a).

89.     ESL's policies and practices complained of herein were and are consumer-oriented, in that they affect all consumers who maintain checking accounts with ESL.

90.     The complained-of policies and practices were and are misleading in a material respect, because (a) ESL promised to charge RI Fees in the amount of $10, (b) Ms. Roy and the New York Subclasses did not agree to pay more than one RI Fee per transaction, and (c) because ESL promised to only charge OD Fees on transactions that actually overdraw an account, i.e. when there were insufficient actual funds in the account to cover the transaction.

91.     Ms. Roy and members of the New York Subclasses were injured as a result of ESL's policies and practices, in that their accounts were debited by ESL in violation of their agreements with ESL.

92.     ESL's actions were willful and knowing.

93.     As redress for ESL's repeated and ongoing violations of these consumer protection statutes, Ms. Roy and members of the New York Subclasses are each entitled to (a) injunctive relief, and (b) three times actual damages (up to $1,000.00). *See* N.Y. Gen. Bus. Law § 349(h).

## PRAYER FOR RELIEF

WHEREFORE, Ms. Roy and members of the Classes demand a jury trial on all claims so triable and judgment as follows:

A.     Declaring ESL's RI Fee and OD Fee policies and practices to be wrongful, unfair and unconscionable;

B.     Restitution of all RI Fees paid to ESL by Ms. Roy and the Classes above $10 per transaction;

C.     Restitution of all OD Fees paid to ESL by Ms. Roy and the Classes on transactions that did not actually overdraw an account i.e. when there were sufficient actual funds in the account to cover the transactions;

D.     For each member of the Classes, actual damages in an amount according to proof;

E.     For each member of the New York Subclasses, the lesser of (a) three times actual damages in an amount according to proof, or (b) $1,000;

F.     Pre-judgment interest at the maximum rate permitted by applicable law;

G.     Costs and disbursements assessed by Ms. Roy in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

H.     Such other relief as this Court deems just and proper.

**TRIAL BY JURY IS DEMANDED**

Plaintiff respectfully demands a trial by jury on all issues so triable.

Dated: October 4, 2019                         Respectfully submitted,

*/s/ David M. Kaplan*
David M. Kaplan
**DAVID M. KAPLAN, Attorney at Law**
46 Helmsford Way
Penfield, New York 14526
Phone: (585) 330-2222
Facsimile: (585) 445-6767
*dmkaplan@rochester.rr.com*

Michael R. Reese
George V. Granade
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone:     (212) 643-0500
Facsimile:     (212) 253-4272
*mreese@reesellp.com*
*ggranade@reesellp.com*

**KALIEL PLLC**
Jeffrey D. Kaliel (*pro hac vice* to be filed)
Sophia G. Gold (admitted *pro hac vice*)
1875 Connecticut Ave. NW 10th Floor
Washington, D.C.  20009
Telephone: (202) 350-4783
*jkaliel@kalielpllc.com*
*sgold@kalielpllc.com*

**TYCKO & ZAVAREEI LLP**
Andrea Gold
1828 L St NW, Suite 1000
Washington, DC 20036
Telephone: 202-973-0900
*hzavereei@tzlegal.com*
*agold@tzlegal.com*

**KOPELOWITZ OSTROW FERGUSON
WEISELBERG GILBERT**
Jonathan M. Streisfeld
One W. Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Telephone: 954-525-4100
*ostrow@kolawyers.com*
*streisfeld@kolawyers.com*
*tropin@kolawyers.com*

***Counsel for Plaintiff and the Proposed Classes***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 4th day of October, 2019, this Amended

Complaint was filed electronically on the CM/ECF system, which caused all CM/ECF

participants to be served by electronic means.

Respectfully submitted,

*/s/ David M. Kaplan*