**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**SUSAN ROY**, on behalf of herself and all others similarly situated,

Plaintiff,

v.

**ESL FEDERAL CREDIT UNION**,

Defendant.

Civil Action No. 19-cv-6122 (FPG/MWP)

**DEFENDANT ESL FEDERAL CREDIT UNION'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

Page

INTRODUCTION ..... 1

ARGUMENT ..... 1

I. ESL Did Not Breach The Parties' Contract By Assessing Overdraft Fees On The Available Balance In Plaintiff's Account ..... 1

II. ESL Did Not Breach The Parties' Contract By Assessing An NSF Fee Each Time An Item Was Presented Against Insufficient Available Funds ..... 4

III. Plaintiff Has Failed To State A Claim For Breach Of The Implied Covenant ..... 8

IV. Plaintiff Has Failed To State A Claim For Violation Of N.Y. GBL § 349 ..... 9

V. Plaintiff's Claims Are Preempted By Federal Law ..... 10

CONCLUSION ..... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Chambers v. NASA Fed. Credit Union*,
222 F. Supp. 3d 1 (D.D.C. 2016) ........................................ 4

*Domann v. Summit Credit Union*,
18-167, 2018 WL 4374076 (W.D. Wis. Sept. 13, 2018) ........................................ 4

*Gunter v. United Fed. Credit Union*,
No. 15-00483, 2016 WL 3457009 (D. Nev. June 22, 2016) ........................................ 4

*Lambert v. Navy Fed. Credit Union*,
No. 19-103, 2019 WL 3843064 (E.D. Va. Aug. 14, 2019) ........................................ 5, 8, 10

*Pinkston-Poling v. Advia Credit Union*,
227 F. Supp. 3d 848 (W.D. Mich. 2016) ........................................ 4

*Smith v. Bank of Haw.*,
No. 16-513, 2017 WL 3597522 (D. Haw. Apr. 13, 2017) ........................................ 3

*Tims v. LGE Cmty. Credit Union*,
No. 17-14968, 2019 WL 4019847 (11th Cir. Aug. 27, 2019) ........................................ 3

*Whittington v. Mobiloil Fed. Credit Union*,
No. 16-482, 2017 WL 6988193 (E.D. Tex. Sept. 14, 2017), *aff'd*, 2019 WL 5198474 (5th Cir. Oct. 15, 2019) ........................................ 10

*Wodja v. Wash. St. Emps. Credit Union*,
No. 15-5693, 2016 WL 3218832 (W.D. Wash. June 9, 2016) ........................................ 4

**Other Authorities**

https://www.paypal.com/us/webapps/mpp/ua/useragreement-full#payment-method (last visited Oct. 30, 2019) ........................................ 6

## INTRODUCTION

This motion turns on the language of the parties' contract. Plaintiff claims the contract means ESL must assess overdraft fees based only on the ledger balance and not the available balance in her account. She also argues ESL may not assess an NSF fee on a new transaction if a previous attempted transaction to collect the same payment was returned.[1] Plaintiff's interpretation is inconsistent with the plain language of the contract, long-standing banking practices and the parties' well-established course of dealings. Because all of her claims are contradicted by the parties' contract, the Court should dismiss the FAC in its entirety without leave to amend.

## ARGUMENT

### I. ESL Did Not Breach The Parties' Contract By Assessing Overdraft Fees On The Available Balance In Plaintiff's Account

To prevail on her first claim for breach of contract, Plaintiff must show that the relevant contract means ESL can only assess overdrafts based on what she calls the ledger balance. Knowing the term ledger balance is not used anywhere in the parties' contract, Plaintiff attempts to meet the "plausibility" standard by relying on the statement in the Membership Agreement that ESL will only charge overdraft fees on transactions "which would cause [a member's] share draft account to have a negative (or further negative) balance." Opp. at 4-6. According to Plaintiff, the term "negative balance" must be construed to mean ledger balance because it fails to include the word "available" before the word "balance." *Id.*

Plaintiff's theory cannot be sustained because it focuses myopically on a single sentence and ignores the remainder of the parties' contract. As explained in ESL's motion, the Membership Agreement as a whole makes clear that the term "negative balance" means a negative "available

---

[1] Plaintiff has withdrawn her claim that ESL breached the Membership Agreement by charging the $37 Overdraft/Insufficient Funds fee instead of the $10 Returned Item fee for transactions declined as a result of insufficient funds. *See* Opp. at 3 n.1.

balance." It does this in a number of ways. First, it states that members may only withdraw "available" funds and that they will overdraw their account if they spend more than that amount.[2] Next, the parties' contract makes clear that "Courtesy Pay" (*i.e.*, overdraft coverage) is assessed on the basis of the "available balance."[3]

Apparently admitting the contract *does* say available balance, Plaintiff next argues that "[c]ustomers cannot be expected to bear the burden of knowing banking terms of art ESL never defines." *Id.* at 8. Again she is wrong. The parties' contract does specifically define the funds "available" for withdrawal; they exclude amounts held for uncollected deposits and pending debit-card transactions. *See* Smith Decl., Ex. 1 at 10 (warning that deposits are not "immediately available for withdrawal" and that "[t]he amount of authorized purchases" members make with their debit cards are "immediately unavailable for withdrawal" from their checking accounts for up to two full business days following the transactions); *see also* FAC, Ex. 2 at 11-12 (explaining how much of and when deposits will be "available" for withdrawal by members). Significantly, Plaintiff entirely ignores the fact that the contract expressly warns members that "[t]he amount of authorized [debit card] purchases" will be deducted from the funds available for withdrawal.

---

[2] *See* FAC, Ex. 2 at 8 ("ESL will not pay a check when funds are not *available* to cover it, and an overdraft fee will be assessed (refer to a Fee Schedule for the exact fee charged).") (emphasis added); *id*. (if a "determination of the account balance . . . reveals insufficient *available* funds to pay the check or other item . . . we may honor checks, ESL Bill Pay transactions and reoccurring ACH debit transactions drawn on insufficient funds pursuant to our Courtesy Pay agreement") (emphasis added).

[3] *See* FAC, Ex. 2 at 13 (Courtesy Pay will be extended only if "Your share draft account is brought to a positive end-of day *available balance* at least once every 20 days") (emphasis added); *id*. at 6 (explaining with respect to simple spending accounts "Overdraft options are not available on this account. Any ATM, POS, ACH or Visa Check Card transaction initiated for an amount over your *available account balance* may be declined.") (emphasis added); *id*. at 11 (explaining that certain internal subaccounts maintained on the books by ESL "will not affect your *available balance*") (emphasis added). In light of these statements, Plaintiff's assertion that the term "available balance" "never appear[s] in the Account Documents" (Opp. at 5) is demonstrably false.

Because the contract explains to members that they can only spend their "available" funds, that spending more would overdraw their accounts, and that available funds exclude deposit holds and debit-card authorization holds, the Membership Agreement's statement that ESL will only charge overdraft fees on transactions that would cause an account to have a "negative balance" can only be read to refer to a member's "available balance," not ledger balance.

Plaintiff's contention that the EFT Disclosure indicates that "it is the 'actual balance' that is determinative of overdrafts" is also meritless. *See* Opp. at 5 (relying on the language that any "transaction that clears against insufficient funds . . . will result in an insufficient funds (NSF) fee for each transaction regardless of the account balance indicated . . . at the time you performed the transaction" because that balance "may not always reflect the actual balance in your account"). The purpose of this language is to warn members that an account's balance at the time they performed a transaction may not correspond to the real balance of the account. It in no way states or implies that overdrafts are determined based on the ledger balance.

In an effort to avoid dismissal, Plaintiff points to a number of decisions by other courts, including a recent decision by the Eleventh Circuit. *Id.* at 7-9. Like any breach of contract case, these cases turn on the specific language of the contract at issue and therefore, they can be distinguished from the contract in this case. In particular, none of the cases involved contracts, like the ESL contract, that specifically warned that money set aside for pending debit-card transactions would be unavailable for immediate withdrawal. *See, e.g.*, *Tims v. LGE Cmty. Credit Union*, 935 F.3d 1228, 1239 (11th Cir. 2019) (unlike the ESL agreement, the LGE account agreements "said nothing about whether pending debits affected consumers' ability to withdraw funds"); *Smith v. Bank of Haw.,* No. 16-513, 2017 WL 3597522 (D. Haw. Apr. 13, 2017) (same).[4]

[4] Also, many of the agreements in the cases cited by Plaintiff did not even have a reference to

If the Court were to look for guidance from other district courts, ESL submits that it should follow *Domann v. Summit Credit Union*, 18-167, 2018 WL 4374076 (W.D. Wis. Sept. 13, 2018), where the district court granted a motion to dismiss on contract language stating overdrafts occur when "the available funds" in the member's account are "not sufficient to pay the full amount of a check, draft, transaction, or other item, plus any applicable fee, that is posted to your account." *See id*. at *6-8 (when the credit union's funds availability policy is read in context, "the agreements could only be reasonably interpreted as providing for use of the available balance"); *see also Chambers v. NASA Fed. Credit Union*, 222 F. Supp. 3d 1, 11-12 (D.D.C. 2016) (same). Notably, Plaintiff does not even attempt to distinguish *Domann*. While she notes that the *Chambers* agreement "had an entire section titled 'Available Balances to Make Transactions'" (Opp. at 7), in fact, the ESL agreement's language is stronger because it expressly tells members that money set aside for pending debit-card transactions is unavailable for immediate withdrawal.

Accordingly, the precedent in this area is clear that if the credit union's agreement says available balance and explains that deposits and pending debit-card holds affect available balance, then claims like Plaintiff's fail as a matter of law. Plaintiff's contract claim must be dismissed because she does not (and cannot) show that the parties' agreement "as written reasonably can be understood as a promise by [ESL] to use a member's actual or 'ledger' balance when assessing overdraft fees." *Domann*, 2018 WL 4374076 at *8; *accord Chambers*, 222 F. Supp. 3d at 11-12.

## II. ESL Did Not Breach The Parties' Contract By Assessing An NSF Fee Each Time An Item Was Presented Against Insufficient Available Funds

Equally meritless is Plaintiff's claim that ESL breached the parties' contract by assessing

"available funds." *See Pinkston-Poling v. Advia Credit Union*, 227 F. Supp. 3d 848, 854 (W.D. Mich. 2016) (no reference to available funds); *Gunter v. United Fed. Credit Union*, No. 15-483, 2016 WL 3457009, at *3 (D. Nev. June 22, 2016) (no reference to available balance or available funds); *Wodja v. Wash. St. Emps. Credit Union*, No. 15-5693, 2016 WL 3218832, at *3 (W.D. Wash. June 9, 2016) (no reference to available balance or available funds).

more than one NSF fee on what Plaintiff concludes is "a single transaction." In an effort to avoid dismissal of her breach of contract claim, Plaintiff makes several arguments, none of which have merit. *First*, Plaintiff claims that the Membership Agreement's language that ESL will charge an NSF fee "'for each 'insufficient funds' item presented for payment and returned unpaid on a share draft account'" must be read as "a promise for one fee per 'item,' not for a fee *each time* an 'item' is returned." Opp. at 10 (emphasis Plaintiff's). Plaintiff's interpretation is completely unreasonable. Even assuming a merchant's second ACH transaction is the same item (it is not), unfortunately for Plaintiff, the language does not state that only one NSF fee may be charged "per item." Instead, it states that a fee may be charged for "each 'insufficient funds' item" that is "returned unpaid." Plaintiff may not ignore the word "each." *See Lambert v. Navy Fed. Credit Union*, No. 19-103, 2019 WL 3843064, at *5 (E.D. Va. Aug. 14, 2019). Because an item may be returned for insufficient funds more than once, the Membership Agreement unambiguously provides that a fee may be imposed any time an item is presented for payment and returned for insufficient funds. There is simply no other plausible way to read the contractual language.[5]

*Second*, Plaintiff argues that because the EFT Disclosure warns members that an NSF fee will be collected for each attempt by the ESL Online Bill Pay provider to collect payment means that this is not the case for all other types of payments. *See* Opp. at 10-11. That argument too is

---

[5] Plaintiff also notes that ESL's Fee Schedule states an Overdraft/Insufficient Funds fee is $37.00 but does not specify that the fee can be assessed on "the same item" no matter how many times the item is resubmitted for payment. Opp. at 10. According to Plaintiff, because the Fee Schedule "does not specify either way [on this issue] . . . it is at least ambiguous." *Id*. But any lack of clarity of the Fee Schedule is resolved by the Membership Agreement, which unambiguously provides an NSF fee may be charged each time an item is returned for insufficient funds. Plaintiff further contends that the fact that "ESL uses identical language" to describe both overdraft and NSF fees even though "it is [] impossible for an overdraft item to incur more than one overdraft fee" means that "items can incur at most a single OD Fee or a single [NSF] Fee." *Id.* at 15. But her conclusion does not follow from her premise. The fact that an item paid into overdraft cannot incur another fee does not mean that an item presented and *returned* cannot do so.

meritless. The EFT Disclosure provision relied on by Plaintiff states that "[i]f the payment was electronic, the ESL Online Bill Pay provider will attempt to collect funds up to three times, and an insufficient funds fee will be collected for each attempt where the funds are not available in the account." *Id.* at 11. The obvious purpose of this is to explain that the provider "will attempt to collect funds up to three times" if the initial attempt is rejected. ESL has no idea whether a merchant will initiate multiple ACHs in an attempt to collect. Here, however, the PayPal agreement at issue does expressly give PayPal the authority to "try [the] transfer again if the initial transfer is rejected by your bank." *See* https://www.paypal.com/us/webapps/mpp/ua/useragreement-full#payment-method (last visited Oct. 30, 2019). Although the EFT provision also notes that an NSF fee will be charged for each attempt to collect payment against unavailable funds, that reminder merely confirms ESL's reading of the contract.

*Third*, Plaintiff claims that ESL's reading of the contract is "not in harmony" with the agreements of other credit unions and banks. Specifically, Plaintiff points out that some other banks expressly limit NSF fees to one fee regardless of how many times a request for payment is submitted. *See* Opp. at 12. But ESL never makes that promise in any of its agreements. Nor does ESL agree to be in "harmony" with other credit unions and banks. Plaintiff also observes that some banks expressly explain in their account agreements that "'[b]ecause we may charge a service fee for an NSF item *each time it is presented*, we may charge you more than one service fee for any given item.'" *See id*. (quoting First Citizens Bank's agreement; emphasis Plaintiff's). But this merely shows that other banks follow the same practice as ESL with "each" language. Like First Citizens Bank, ESL tells customers that it will charge a fee "for each 'insufficient funds' item presented for payment and returned unpaid." FAC, Ex. 2 at 13. The bottom line is Plaintiff permitted PayPal to present the ACHs in question and each one was returned. The Membership

Agreement expressly permits ESL to assess a fee for "each" one. Indeed, as shown by the cases challenging the NSF practices of credit unions and banks, the default rule in the banking industry is that unless expressly stated otherwise, banks may charge an NSF fee each time an item is returned for insufficient funds.

*Fourth*, Plaintiff claims that the NACHA rules support her position that "an 'item' is not a new 'item' when it is reprocessed." Opp. at 13-14. Specifically, Plaintiff asserts that the NACHA rules use "an analogous term ('Entry') [and make] clear that the same 'Entry' may undergo multiple processing attempts, but nevertheless remains the same 'Entry.'" *Id.* at 13. (citing rules for "Reinitiated Entries"). In addition, Plaintiff stresses that NACHA requires merchants to expressly code "RETRY PAYMENTS" for any entry that has been previously submitted and returned for insufficient funds. *Id.* According to Plaintiff, "[t]his directly rebuts ESL's argument that the merchant initiated a new, separate 'item' or a new order for payment" because "[a]n 'Entry' and an 'item' are analogous." *Id.* at 14. But the foregoing does not in any way help Plaintiff. Contrary to Plaintiff's contention, the words "entry" and "item" are not "analogous." The fact that NACHA tracks "entries" throughout their processing history and requires merchants to label previously submitted "entries" as "retry payments" does not mean that the latter are not new "items" for purposes of assessing NSF fees. What is more, and in any event, it does not matter whether a "retry payment" is considered a "new" or an "old" item because the parties' contract states that an NSF fee may be charged any time any item is "presented for payment and returned unpaid" for insufficient funds.[6]

Finally, Plaintiff relies on a handful of cases from other jurisdictions that challenged

---

[6] Plaintiff further stresses that "it is fraudulent for merchants" not to code transactions as "retry payments." Opp. at 14. But this case is not about coding; there is also no allegation that ESL did not properly label transactions as "retry" payments.

"multiple NSF fee" claims (most of which contain little analysis of the issue). *Id.* at 16-17. ESL respectfully submits that the analysis set forth in *Lambert*, is the correct one on the subject. The Membership Agreement contains language that is almost identical to the language that caused the *Lambert* court to conclude there could be no breach of contract for repeat NSF transactions. As here, the thrust of the plaintiff's claim in *Lambert* was that when a merchant makes two requests, for the same amount, for the same purpose, the requests should be treated as the "same" item and be subject only to a single NSF fee. *See* 2019 WL 3843064 at *3. The *Lambert* court analyzed the term "item" (*i.e.*, a "fee may be assessed … for *each* returned debit item") and found that "Plaintiff's interpretation is unreasonable in light of the contract as a whole." *Id*. at *3-4. Similar to the agreement in *Lambert*, ESL's language contemplates that a payment transaction will be subject to an NSF fee any time it is presented and rejected for payment. *See* FAC, Ex. 2 at 13 ("an Overdraft/Insufficient Funds fee will be charged by ESL for each 'insufficient funds' item presented for payment and returned unpaid on a share draft account").

Plaintiff claims that *Lambert* is distinguishable because the agreement in that case contained "a distinction between paper check transactions and ACH transactions" as well as "a definition of 'item' that included 'ACH debits.'" *See* Opp. at 16-17. But those are truly distinctions that make no difference. No one is disputing whether the PayPal ACH was an "item." The critical holding in *Lambert* is that "when the terms of the contract are read together and in context, the contract unambiguously provides that 'each' time Navy Federal Credit Union 'returns' a request for payment (a 'debit item') for insufficient funds, a nonsufficient fund fee may be assessed without regards to whether the returned debit item was a re-presentment of a previously rejected request." 2019 WL 3843064 at *5. The same conclusion should be reached here.

## III. Plaintiff Has Failed To State A Claim For Breach Of The Implied Covenant

As explained in ESL's motion, because the parties' agreement expressly permits ESL to

charge the challenged fees, ESL's assessment of such fees cannot constitute a breach of the implied covenant. *See* Mot. at 17-18 (citing cases for the rule that a party's exercise of its legitimate contractual rights cannot constitute a breach of the implied covenant). In response, Plaintiff does not deny that her covenant claims are based on the same allegations that underpin her breach of contract claims. *See* Opp. at 18-19. She claims, however, that her implied covenant claim is not merely duplicative of her contract claims because it "focus[es] on the abuse of contractual discretion, and on ESL's leaving key terms undefined and interpreting them in an unreasonable manner." *Id.* at 19. According to Plaintiff, the cases cited by ESL do not apply where the implied covenant claim rests on "an inappropriate exercise of discretion." *Id.* at 20. But contrary to Plaintiff's contention, this is not a case where the contract grants discretion to a particular party and that party abuses that discretion. The contract either gives ESL the power to assess the challenged fees or it does not. Because it does give ESL the power, Plaintiff's implied covenant claim is merely a "cut-and-paste of her contract claim" (*id.*), and should be dismissed as such.

## IV. Plaintiff Has Failed To State A Claim For Violation Of N.Y. GBL § 349

As set forth in the motion, Plaintiff's N.Y. GBL § 349 claim should be dismissed because that claim is also based solely on an alleged violation of the contract (and as a matter of law there was no such violation). None of Plaintiff's arguments in response support a contrary conclusion.

To begin, Plaintiff repeats her claim that "ESL engaged in deceptive business acts and practices under the GBL by making false promises regarding its fee practices." *Id.* at 20-21. Plaintiff further contends that "whether or not the documents are materially misleading is a factual matter, appropriately left at this stage for the finder of fact." *Id.* at 20. But as already shown, there was no "false promise." ESL did not do anything that it promised not to do.[7]

[7] Plaintiff's reliance on *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 406 (S.D.N.Y. 2010) is misplaced, because there the court found that the plaintiff had "pleaded a materially deceptive act."

Plaintiff also takes issue with ESL's argument that she did not plead a loss independent of the loss caused by the alleged breach of contract. According to Plaintiff, she "may properly bring a § 349 claim and a breach of contract claim simultaneously." *Id.* at 21. But ESL is not arguing that a party cannot bring both claims, but that Plaintiff's N.Y. GBL § 349 claim must allege a loss independent of the contract. Plaintiff also asserts there is in fact no "broad" New York law requirement to allege an injury independent of her contract damages. *Id*. But regardless of whether that is true, here, Plaintiff's claim must be dismissed because the only damage that she has alleged stems from alleged contract violations and ESL did not violate the contract as a matter of law.

## V. Plaintiff's Claims Are Preempted By Federal Law

Finally, Plaintiff's claims should be dismissed to the extent she seeks to hold a federally-chartered credit union liable for allegedly failing to adequately disclose its overdraft and insufficient funds practices. Plaintiff attempts to avoid preemption by arguing that "[n]o regulations exempt federal banks and credit unions from generally applicable state laws that incidentally affect the imposition of such fees." Opp. at 23. She is wrong—federal banking law does preempt contract and other state law claims to the extent such claims are based on a failure to make specific disclosures or on some perceived "unfairness." *See Lambert*, 2019 WL 3843064 at *2-3; *Whittington v. Mobiloil Fed. Credit Union*, No. 16-482, 2017 WL 6988193, at *11 (E.D. Tex. Sept. 14, 2017), *aff'd*, 2019 WL 5198474 (5th Cir. Oct. 15, 2019). Plaintiff also claims that the FAC is based on "affirmative misrepresentations in the form of false promises by ESL, not just omissions." Opp. at 22. But again, ESL did not make any "false promises." Because at bottom Plaintiff's claims rest on a theory of non-disclosure, they are preempted by federal law.

## CONCLUSION

For the reasons set forth in the motion and above, ESL respectfully requests that the Court dismiss the FAC in its entirety with prejudice.

Dated: December 23, 2019

**NIXON PEABODY LLP**

By: s/ Richard A. McGuirk
Richard A. McGuirk
1300 Clinton Square
Rochester, New York 14604
(585) 263-1000
nncguirk@nixonpeabody.com

Stuart M. Richter, Esq. *(pro hac vice)*
**Katten Muchin Rosenman LLP**
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
stuart.richter@katten.com

*Attorneys for ESL Federal Credit Union*