UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SUSAN ROY, on behalf of herself and all others similarly situated, | |
| Plaintiff, | CASE NO. 6:19-cv-06122-FPG-JWF |
| vs. | |
| ESL FEDERAL CREDIT UNION, | |
| Defendant. | |

**UNOPPOSED MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION**

**FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF CONTENT

I.    INTRODUCTION ............................................................................................... 1

II.   BACKGROUND .............................................................................................. 2

   A.   Procedural History .................................................................................. 2

   B.   Class Counsel's Investigation ................................................................ 3

   C.   Summary of the Settlement Terms ......................................................... 4

      1.   The Settlement Class ........................................................................ 4

      3.   Releases ............................................................................................ 6

      4.   The Notice Program .......................................................................... 7

      5.   Settlement Administration ................................................................ 8

      6.   Settlement Termination ..................................................................... 9

      7.   Class Representative Service Award .................................................. 9

      8.   Attorneys' Fees and Costs .............................................................. 10

III.  ARGUMENT .................................................................................................. 10

   A.   Legal Standard for Preliminary Approval ........................................... 10

   B.   The Settlement Satisfies the Criteria for Preliminary Approval ........................... 11

      1.   This Settlement Is The Product of Good Faith, Informed, and Arm's Length
Negotiations ........................................................................................ 12

      2.   The Facts Support a Preliminary Determination That The Settlement Is Fair,
Adequate, and Reasonable ................................................................. 13

   C.   Certification of the Settlement Class Is Appropriate ............................ 20

   D.   The Proposed Notice Program Is Constitutionally Sound ................... 23

   E.   Notice Is Satisfied Pursuant to the Class Action Fairness Act ("CAFA") ............. 24

   F.   Plaintiff's Counsel Should Be Appointed Class Counsel ..................... 24

IV.   CONCLUSION ............................................................................................... 25

# **TABLE OF AUTHORITY**

**Cases**

*Am. Medical Ass'n v. United Healthcare Corp.,* No. 00 Civ. 2800(LMM),
   2009 WL 1437819 (S.D.N.Y. May 19, 2009) .......................................................... 13

*Amchem Products, Inc. v. Windsor,* 521 U.S. 591 (1997) ........................................... 21

*In re Austrian & German Bank Holocaust Litig.,* 80 F. Supp. 2d 164 (S.D.N.Y. 2000).. 14, 17, 18

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 222 F.3d 52 (2d Cir. 2000)........................... 22

*In re Beacon Assocs. Litig.,* 282 F.R.D. 315 (S.D.N.Y. 2012) ..................................................... 21

*In re Bear Stearns Co. Sec. Derivative and ERISA Litig.,*
   909 F. Supp. 2d 259 (S.D.N.Y. 2012)................................................................................... 18

*Becher v. Long Island Lighting Co.,* 64 F. Supp. 2d 174 (E.D.N.Y. 1999)................................... 12

*Beebe v. V&J National Enterprises, LLC,* No. 6:17-CV-06075 EAW,
   2020 WL 2833009 (W.D.N.Y. June 1, 2020)....................................................................... 14, 15

*Berkson v. Gogo LLC,* 147 F. Supp. 3d 123 (E.D.N.Y. 2015) ............................................... 20, 21

*Bodnar v. Bank of Am., N.A.,* No. 14-3224, 2016 WL 4582084 (E.D. Pa. Aug. 4, 2016)........... 15

*In re Checking Account Overdraft Litig.,* No. l:09-MD-02036-JLK,
   2015 WL 12641970 (S.D. Fla. May 22, 2015) ................................................................... 15, 16

*In re Citigroup Inc. Sec. Litig.,* 965 F. Supp. 2d 369 (S.D.N.Y. 2013) ....................................... 14

*City of Detroit v. Grinnell Corp.,* 495 F.2d 448 (2d Cir. 1974)............................................... 13, 15

*Cohen v. J.P. Morgan Chase & Co.,* 262 F.R.D. 153 (E.D.N.Y. 2009)....................................... 22

*Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473 (2d Cir. 1995) ....................................... 21

*D'Amato v. Deutsche Bank,* 236 F.3d 78 (2d Cir. 2001) ....................................................... 12, 14

*Frank v. Eastman Kodak Co.,* 228 F.R.D. 174 (W.D.N.Y. 2005) ................................... 17, 18, 19

*Garland v. Cohen & Krassner,* No. 08-CV-4626 (KAM) (RLM),
   2011 WL 6010211 (E.D.N.Y. Nov. 29, 2011)................................................................... 16, 17

*Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147 (1982) ................................................................. 22

*Godson v. Eltman, Eltman, & Cooper, P.C.,* 328 F.R.D. 35 (W.D.N.Y. 2018) ............... 14, 17, 18

*Goldberger v. Integrated Res., Inc.,* 209 F.3d 43 (2d Cir. 2000).................................................. 13

*In re GSE Bonds Antitrust Litig.,* 414 F. Supp. 3d 686 (S.D.N.Y. 2019) ........................ 13, 14, 22

*Hawthorne v. Umpqua Bank*, No. 11-cv-06700-JST,
    2015 WL 1927342 (N.D. Cal. Apr. 28, 2015) ........................................................... 16

*Hill v. County of Montgomery,* No. 9:14-cv-00933 (BKS/DJS),
    2020 WL 5531542 (N.D.N.Y. Sept. 15, 2020) ............................................. 10, 22, 23

*Johnson v. Nextel Commc'ns Inc.,* 780 F.3d 128 (2d Cir. 2015) ................................................. 22

*Kirby v. FIC Restaurants, Inc.,* No. 5:19-CV-1306 (FJS/ML),
    2020 WL 3501398 (N.D.N.Y. June 29, 2020) ............................................. 13, 20, 24

*Kommer v. Ford Motor Co.,* No. 1:17-CV-0296 (LEK/DJS),
    2020 WL 7356715 (N.D.N.Y. Dec. 15, 2020) ........................................................... 20

*Marroquin v. Champlain Valley Specialty of N.Y., Inc.,* No. 5:15-cv-00441 (MAD/TWD),
    2016 WL 3406111 (N.D.N.Y. June 17, 2016) ........................................................... 14

*Massrre v. Mullooly, Jeffrey, Rooney & Flynn LLP,* No. 19 Civ. 4654 (KAM) (VMS),
    2020 WL 6321480 (E.D.N.Y. Aug. 28, 2020) .......................................................... 12

*In re Med. X-Ray Film Antitrust Litig.,* No. 93-CV-5904,
    1998 WL 661515 (E.D.N.Y. Aug. 7, 1998) ............................................................... 16

*Newman v. Stein,* 464 F.2d 689 (2d Cir. 1972) .......................................................................... 14

*Odom v. Hazen Transport, Inc.,* 275 F.R.D. 400 (W.D.N.Y. 2011)...................................... passim

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,* 330 F.R.D. 11 (E.D.N.Y.
    2019). .......................................................................................................... passim

*Plummer v. Chemical Bank,* 668 F.2d 654 (2d Cir. 1982)........................................................... 18

*Ray v. 1650 Broadway Associates Inc.,* No. 16-CV-9858 (VSB),
    2020 WL 5796203 (S.D.N.Y. Sept. 29, 2020)........................................................... 10

*Roberts v. Capital One, N.A.,* Case No. 1:16-cv-04841-LGS (S.D.N.Y. Dec. 1, 2020) ............. 15

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.,* 659 F.3d 234 (2d Cir. 2011) ........................... 22

*Stefaniak v. HSBC Bank U.S.A., N.A.,* No. 1:05-CV-720 S,
    2008 WL 7630102 (W.D.N.Y. June 28, 2008) ......................................................... 20

*In re Signet Jewelers Limited Securities Litig.,* No. 1:16-cv-06728-CM-SDA,
    2020 WL 4196468 (S.D.N.Y. July 21, 2020) ........................................................... 11

*Velez v. Novartis Pharms. Corp.,* No. 04-CV-9194,
  2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) .......................................................... 20

*In re Visa Check/Mastermoney Antitrust Litig.,* 297 F. Supp. 2d 503 (E.D.N.Y. 2003) ........ 19, 23

*Wal-Mart Stores v. Visa U.S.A.,* 396 F.3d 96 (2d Cir. 2005) ....................................................... 10

*Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338 (2011) .......................................................... 12, 21

**Statutes**

28 U.S.C. § 1715 .......................................................................................................................... 9, 24

**Other Authorities**

*Manual for Compl. Litig.,* §§ 21.632 ............................................................................................ 21

*Manual for Compl. Litig.,* §§ 21.633 ............................................................................................ 21

**Rules**

Fed. R. Civ. P. 23 .................................................................................................................... passim

## I.   **INTRODUCTION**

Plaintiff Susan Roy ("Plaintiff") and her Counsel achieved significant results for the Settlement Class: Defendant ESL Federal Credit Union ("ESL" or "Defendant") has agreed to make available $1,700,000.00 in cash to all Account holders who were assessed either a Retry Fee and/or a Sufficient Funds Fee during the applicable statutory limitations period, and to forgive over $130,000.00 worth of Uncollected Relevant Fees. Plaintiff now respectfully requests that the Court grant Preliminary Approval[1] of the Settlement Agreement and Release, attached hereto as *Exhibit A*, which will resolve all claims against ESL in the above-entitled Action.

This Court should grant Preliminary Approval because the terms of the proposed Settlement are fair, adequate, and reasonable under the law, and provide substantial relief for the Settlement Class. Indeed, given the significant risks inherent in this Action, the $1,830,758.36 Value of the Settlement, consisting of ESL's: (a) cash payment of $1,700,000.00; and (b) agreement to forgive, waive, and not to collect an additional $130,758.36 in Uncollected Relevant Fees, is an excellent result for Settlement Class Members. Moreover, where the Settlement provides for a guaranteed, direct, and immediate award for Settlement Class Members, this benefit far outweighs the substantial risks and uncertainties of continued litigation and expense. Indeed, the Settlement Administrator will automatically distribute to Settlement Class Members their pro rata share of the Net Settlement Fund—there are no claim forms and Settlement Class Members will not be required to submit proof that they were harmed by ESL's Retry Fee and Sufficient Funds Fee practices. Instead, Class Counsel and its expert will use ESL's available data to determine which Account Holders were harmed by the assessment of Relevant Fees, and will apply an appropriate formula to calculate each Settlement Class Member's appropriate distribution. Thus, the plan of allocation fairly and adequately accounts for the value of each Settlement Class Member's individual claim.

In sum, the Settlement readily satisfies all criteria required for settlement approval in the Second Circuit and under the Federal Rules of Civil Procedure.

---

[1] All capitalized terms used throughout this memorandum have the same meanings as those found in the Settlement Agreement.

1

## II.    <u>BACKGROUND</u>

### A.  Procedural History

On February 15, 2019, Plaintiff Susan Roy filed her putative class action complaint in the Action, seeking damages, restitution, and declaratory relief arising from ESL's allegedly unfair and unconscionable assessment and collection of Returned Item Fees, which Defendant charges when it returns certain checking account debits unpaid. Dkt. No. 1.

On October 7, 2019, Plaintiff filed the operative Amended Complaint, asserting claims for breach of contract and the covenant of good faith and fair dealing, and violation of New York General Business Law ("GBL"), Section 349, arising from allegations that ESL improperly assessed both Retry Fees and Sufficient Funds Fees on customers' accounts. Dkt. No. 30.

On November 7, 2019, Defendant filed a Motion to Dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedural 12(b)(6), (Dkt. No. 31), which the Court granted as to the breach of the implied covenant of good faith and fair dealing claim, but denied as to the breach of contract and GBL claims on September 30, 2020. (Dkt. No. 57). On October 14, 2020, Defendant filed its Answer and Affirmative Defenses. Dkt. No. 58.

While the motion to dismiss was pending, the Parties engaged in important written discovery and numerous meet and confer conferences made in good faith regarding outstanding discovery disputes, including those regarding Defendant's production of electronically stored information ("ESI") and cost-shifting considerations. Joint Declaration of Class Counsel Jeffrey Kaliel, Andrea Gold, and Jeff Ostrow ("Decl."), attached as ***Exhibit B***, ¶ 12.

The Parties also participated in two mediation sessions before Mediator Simeon H. Baum, Esq.—first on April 2, 2020, and then again on September 15, 2020. The Parties did not settle at either mediation. Decl. ¶ 13.

Shortly thereafter, the Parties engaged in further negotiations and ultimately agreed to settle the Action in its entirety. *Id.* ¶ 14. The Parties filed a Notice of Settlement with the Court reflecting the same and requesting that the Court vacate all upcoming hearings and deadlines in the Action pending the Parties execution of the Agreement and the filing of this Motion. Dkt. No. 59.

On February 8, 2021 the Parties finalized and executed the Agreement. *See **Exhibit A***.

### B.  Class Counsel's Investigation

Prior to filing, Class Counsel thoroughly investigated the viability of Plaintiff's claims. Decl. ¶ 7. Class Counsel interviewed a number of ESL members to gather information about ESL's conduct and its impact upon consumers, which was essential to their ability to understand the nature of the ESL's conduct, the language of the Account agreement and other documents at issue, and potential remedies. *Id.*

Class Counsel expended significant resources researching and developing the legal claims at issue. *Id.* ¶ 8. Indeed, Class Counsel is familiar with the instant claims through their extensive history of litigating and resolving other banking fee claims with similar factual and legal issues to the case at bar. *Id.* Class Counsel has experience in understanding the damages at issue, what information is critical in determining class membership, and what data is necessary to calculate each Settlement Class Member's respective damages. *Id.* These key issues were to be heavily contested throughout the litigation, including during the Parties' written discovery process and ongoing meet and confer efforts. *Id.*. Class Counsel, along with its fee expert, spent a significant amount of time analyzing preliminary data regarding ESL's fee revenue related to the assessment of Retry Fees and Sufficient Funds Fees at issue. *Id.* Defendant similarly retained its own expert who conducted a review and analyzed data accordingly. *Id*. This data and analysis evaluating potential damages at issue was used in preparation for the Parties' scheduled meditations and to further drive the viability of resolution. *Id*.

Class Counsel mediated twice with Mediator Simeon H. Baum, Esq., fully informed of the merits of Settlement Class members' claims, and negotiated the proposed Settlement while zealously advancing the position of Plaintiff and the Settlement Class members, and being fully prepared to continue litigation rather than to accept a settlement that was not in their best interests. *Id.* ¶¶ 13, 15 . After the second mediation session, Mr. Baum continued to actively participate in the settlement discussions and helped the Parties reach an acceptable compromise. *Id.* ¶¶ 14, 17.

In sum, prior to negotiating the Settlement, Class Counsel spent significant time conferring with Plaintiff, investigating facts, researching the law, preparing a well-pleaded complaint,

engaging in discovery, working with an expert, and reviewing important documents and data. *Id.*
¶ 15. This resulted in the Settlement for which Preliminary Approval is respectfully requested.

### C.  Summary of the Settlement Terms

#### 1.  The Settlement Class

The Settlement Class is a Fed. R. Civ. P. 23(b)(3) opt-out class, defined as "all current and former members of Defendant with one or more Accounts, who were charged a Relevant Fee during the Class Period." Agreement ¶ 43. "Relevant Fees" include Sufficient Funds Fees (those Overdraft Fees that Defendant charged and did not refund from January 1, 2016 to October 31, 2019, when there was enough money in the Account Holder's Account to cover the transaction in question if holds placed on deposits and pending debit card transactions were not deducted from the amount in the Account) and Retry Fees (Returned Item Fees that were charged and not refunded from January 1, 2016 to October 31, 2019 for Automated Clearing House [ACH] and check transactions that were re-submitted by a merchant after being returned by Defendant for insufficient funds). *Id.* ¶¶ 36, 38, 48. Excluded from the Settlement Class is Defendant, its parents, subsidiaries, affiliates, officers and directors; all Settlement Class members who make a timely election to be excluded; and all judges assigned to this litigation and their immediate family members. *Id.* at ¶ 43.

#### 2.  Relief for The Benefit of The Settlement Class

##### a.  Settlement Fund & Uncollected Relevant Fees

The total Value of the Settlement is $1,830,758.36 consisting of Defendant's: (a) commitment to establish and pay a cash Settlement Fund of $1,700,000.00, and its (b) agreement to forgive, waive, and not collect $130,758.36 in Uncollected Relevant Fees. Decl. ¶ 17. The Settlement Fund will be used to pay: (a) Settlement Class Members their respective cash Settlement Member Payments; (b): Class Counsel for any Court-awarded attorneys' fees and costs; (c) any Court-awarded Service Award for the Class Representative; (d) Settlement Administration Costs; and (e) if any funds remain after the distribution to Settlement Class Members to distribute to the *cy pres* recipient. Agreement at ¶¶ 72-73. Settlement Class Members who are entitled to forgiveness, waiver, and the agreement not to collect assessed, but unpaid Retry Fees and

4

Sufficient Funds Fees, will receive their benefits from the Uncollected Relevant Fees. *Id.* at ¶ 72(e). A Settlement Class Member may qualify for both a Settlement Class Member Payment and forgiveness of Uncollected Relevant Fees by virtue having paid one or more Relevant Fees and having been assessed at least one other Relevant Fee that was not paid and thus became an Uncollected Relevant Fee. *Id.* at ¶ 55.

Settlement Class Members do not have to submit claims or take any other affirmative step to receive relief under the Settlement. Instead, as soon as practicable, but no later than 30 days following the Effective Date of the Settlement, ESL and the Settlement Administrator will distribute the Net Settlement Fund to all Settlement Class Members. *Id.* at ¶ 72(d)(iii).

### b. Allocation of the Settlement Class Member Payments

Of the $1,700,000.00 cash paid into the Settlement Fund, $935,000.00 (55%) is allocated to the Sufficient Funds Fee Class and $765,000.00 (45%) is allocated to the Retry Fee Class. Agreement at ¶ 72(d). If applicable, Settlement Class Members may receive payments as members of the Sufficient Funds Fee Class and the Retry Fee Class. *Id.* Based on this allocation, payments from the Settlement Fund to the Settlement Class Members shall be calculated as follows:

     i.    Settlement Class Members of the Sufficient Funds Fee Class shall be paid per incurred Sufficient Funds Fee (0.55 of the Net Settlement Fund / Total Sufficient Funds Fee) x Total number of Sufficient Funds Fees charged to and paid by each Sufficient Funds Fee Class member;

     ii.    Settlement Class Members of the Retry Fee Class shall be paid per incurred Retry Fee (0.45 of the Net Settlement Fund / Total Retry Fees) x Total number of Retry Fees charged to and paid by each Retry Fee Class member.

*Id.* at ¶ 72(d)(i)-(ii).

### c. Distribution of Settlement Class Member Payments

Settlement Class Members who are Current Account Holders when the Net Settlement Fund is distributed will receive a credit in the amount of the Settlement Class Member Payment to any account they are maintaining individually at the time of the credit. Agreement at ¶ 72(d)(iii)(1). If by the deadline for ESL to apply credits of the Settlement Class Member Payments to accounts

ESL is unable to complete certain credit(s), ESL shall deliver the total amount of such unsuccessful Settlement Class Member Payment credits to the Settlement Administrator to be paid by check in accordance with the procedure for Past Account Holders to receive payment. *Id.*

For those Settlement Class Members who are Past Account Holders when the Net Settlement Fund is distributed, they shall be sent a check by the Settlement Administrator at the address used to provide the Notice, or at such other address as designated by the Settlement Class Member. *Id.* ¶ 72(d)(iii)(2). For jointly held accounts, checks will be payable to all members and will be mailed to the first member listed on the account. *Id.* The Settlement Administrator will make reasonable efforts to locate the proper address for any check returned by the Postal Service as undeliverable and will re-mail it once to the updated address, or in the case of a jointly held account, and in the Settlement Administrator's discretion, to an Account Holder other than the one listed first. *Id.* Settlement Class Members will have 180 days to negotiate the checks. The total value of uncashed checks after 180 days will be distributed to the Court-approved *cy pres* recipient. *Id.*

### d. Forgiveness of Uncollected Relevant Fees

Uncollected Overdraft Fees shall be fully forgiven within 10 days after the Effective Date. *Id.* ¶ 72(e). In doing so, ESL shall update any negative reporting to Chexsystems or credit reporting agencies with respect to Settlement Class Members who receive such debt forgiveness. *Id.*

### e. Disposition of Residual Funds

Within one year after the date the Settlement Administrator mails the first Settlement Class Member Payment, any remaining amounts resulting from uncashed checks shall be distributed to an appropriate *cy pres* recipient agreed to by the Parties and approved by the Court. The Parties propose Jump$tart Coalition for Personal Financial Literacy (https://www.jumpstart.org/). Agreement ¶ 73. In no event shall any portion of the Settlement Fund revert to ESL. *Id.*

### 3. <u>Releases</u>

In exchange for the benefits conferred by the Settlement, all Settlement Class Members will be deemed to have released ESL from claims relating to the subject matter of the Action. The Releases are set forth in Section XI of the Agreement.

4.   **The Notice Program**

The Parties recommend Angeion Group as the Settlement Administrator, one of the leading class action settlement administration firms in the United States. Agreement ¶ 41. The Settlement Administrator will oversee the Notice Program, which is designed to provide the best notice practicable and is tailored to take advantage of the information ESL has available about the Settlement Class. Weisbrot Decl. ¶ 11. The Notice Program is reasonably calculated to apprise Settlement Class members of the following through the Notice: a description of the material terms of the Settlement; a deadline to exclude themselves from the Settlement Class; (c) a deadline to object to the Settlement; the Final Approval Hearing date; (e) and the Settlement Website address to access the Settlement Agreement and other related documents and information. *See generally id.* ¶¶ 11-26; Agreement 59. The Notice and Notice Program constitute sufficient notice to all persons entitled to such notice, satisfying all applicable requirements of law, including Rule 23 and constitutional due process. Weisbrot Decl. ¶¶ 11, 26.

The Notice Program is comprised of three parts: (1) direct Email Notice to Settlement Class members who have or had agreed to receive Account statements from ESL electronically; (2) direct Postcard Notice to Settlement Class members who have not agreed to receive notices from ESL by email, and those Members who the Settlement Administrator is unable to send Email Notice using the email address provided by ESL; and (3) Long Form Notice containing more detail than the Postcard Notice and Email Notice posted on the Settlement Website and available by U.S. mail on request to the Settlement Administrator. Agreement ¶¶ 63-66 and Ex. 1-2 thereto.

The Long Form Notice will describe the procedure that Settlement Class members must follow to opt-out of the Settlement or object to the Settlement, Class Counsel's application for attorneys' fees and costs, and/or the Class Representative Service Award. Specifically, opt-outs must be postmarked no later than the last day of the Opt-Out Period, and objections must be postmarked no later than the last day of the Opt-Out Period (no later than 30 days before the Final Approval Hearing). *Id.* ¶¶ 60, 61. For an objection to be valid, it must include:  the objector's full name, address, and telephone number; all grounds for the objection, accompanied by any legal support; the number of times the objector has objected to a class action settlement within the last

five years and the details of those actions; the identity of all counsel who represent the objector; the number of times his or her counsel have objected to a class action settlement within the last five years; any agreements relating to the objection between the objector and his or her counsel; the identity of all counsel appearing at the Final Approval Hearing; a list of all persons who will be called to testify at the Final Approval Hearing; a statement of intent regarding whether the objector will appear at the Final Approval Hearing; and the objector's signature (an attorney's signature is not sufficient). *Id.* ¶ 62.

The Notice Program (Postcard Notice and Email Notice, including the Notice Re-Mailing Process) shall be completed before the filing of the Motion for Final Approval.

The Settlement Website, which will include hyperlinks to the Agreement, the Long Form Notice, the Preliminary Approval Order, and such other documents as the Parties agrees to post or that the Court orders posted, will be established following Preliminary Approval and prior to commencement of the Notice Program. *Id.* ¶ 47.

The Settlement Administrator will also establish and maintain an automated toll-free telephone line for the Settlement Class to call with Settlement-related inquiries and to receive automated responses, and to accept requests for Long Form Notices. *Id.* ¶ 58(d); Weisbrot Decl. ¶¶ 11, 24-25.

## 5. **Settlement Administration**

The Settlement Administrator's responsibilities include:

a. Using the name and address information for Settlement Class members provided by Defendant in connection with the Notice Program approved by the Court, for the purpose of distributing the Postcard Notice and Email Notice, and later mailing Settlement Class Member Payments to Past Account Holder Settlement Class Members, and to Current Account Holder Settlement Class Members where it is not feasible or reasonable for Defendant to make the Settlement Class Member Payments by a credit to the Current Settlement Class Members' Accounts;

b. Establishing and maintaining a post office box for requests for exclusion from the Settlement Class;

c. Establishing and maintaining the Settlement Website;

d. Establishing and maintaining an automated toll-free telephone line for Settlement Class members to call with Settlement-related inquiries, and answering the questions of Settlement Class members who call with or otherwise communicate such inquiries;

e.        Responding to any mailed Settlement Class member inquiries;

f.        Processing all requests for exclusion from the Settlement Class;

g.        Providing weekly reports to Class Counsel and Defendant that summarizes the number of requests for exclusion received that week, the total number of exclusion requests received to date, and other pertinent information;

h.        In advance of the Final Approval Hearing, preparing a declaration or affidavit to submit to the Court confirming that the Notice Program was completed, describing how the Notice Program was completed, providing the names of each Settlement Class member who timely and properly requested exclusion from the Settlement Class, and other information as may be necessary to allow the Parties to seek and obtain Final Approval.

i.        Distributing Settlement Class Member Payments by check to Past Account Holder Settlement Class Members and Current Account Holder Settlement Class Members who are unable to receive credits;

j.        Providing to Defendant the amount of the Settlement Class Member Payments to Current Account Holder Settlement Class Members and instruct Defendant to initiate the direct deposit or credit of Settlement Class Member Payments to Current Account Holder Settlement Class Members.

k.        Paying invoices, expenses, and costs upon approval by Class Counsel and Defendant, as provided in this Agreement;

l.        Providing notice of this Settlement as required under the Class Action Fairness Act, 28 U.S.C. § 1715; and

m.        Any other Settlement Administration function at the instruction of Class Counsel and Defendant, including, but not limited to, verifying that the Settlement Funds have been distributed.

Agreement at ¶¶ 57-58.

### 6.  <u>Settlement Termination</u>

Either Party may terminate the terms of the Settlement if the Settlement is rejected by the Court or an appellate court. *Id*. ¶ 79. Defendant shall also have the option to terminate the Settlement if 5% or more of the total Settlement Class members opt-out. *Id.* at ¶ 81. Should the Settlement be terminated for either reason, the Agreement shall be considered null and void and the Parties shall be restored to their respective positions in this case as they existed as of the date of the execution of the Agreement. *Id.* ¶¶ 82, 83.

### 7.  <u>Class Representative Service Award</u>

Class Counsel will seek a Service Award of $5,000.00 for Plaintiff as Class Representative. *Id.* ¶¶ 67, 72(b). If the Court approves the award, the $5,000.00 will amount to 0.0027% of the Value of the Settlement. The Service Award will be paid from the Settlement Fund and will be in addition to the Settlement Class Member Payment that Plaintiff will be entitled to receive under

the Settlement. *Id.* ¶¶ 40, 72(b). This award will compensate the Class Representative for her time and effort and for the risks she assumed in prosecuting the Action. Specifically, Plaintiff provided assistance that enabled Class Counsel to successfully prosecute the Action and reach the Settlement, including: (1) submitting to interviews with Class Counsel; (2) locating and forwarding documents and information to Class Counsel; (3) participating in conferences with Class Counsel; and (4) reviewing settlement documentation. In doing so, Plaintiff was integral to the case and Defendant does not object to Class Counsel's request for the Service Award.

### 8.   Attorneys' Fees and Costs

Class Counsel has not been paid for their extensive efforts or reimbursed for litigation costs. Decl. ¶ 20. They are entitled to request, and ESL will not oppose, attorneys' fees of up to 33.33% of the Value of the Settlement, as well as reimbursement of litigation costs incurred in connection with the Action. Agreement ¶ 72(a). The Parties negotiated and reached an agreement regarding fees, costs, and expenses only after the Parties agreed to the material terms of the Settlement. Decl. ¶ 20. Such an award is subject to this Court's approval and will serve to compensate for the time, risk, and expense Plaintiff's counsel incurred in pursuing claims for the Settlement Class.

## III.   ARGUMENT

### A.  Legal Standard for Preliminary Approval

Courts, including the Second Circuit, emphasize the "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores v. Visa U.S.A.,* 396 F.3d 96, 116 (2d Cir. 2005); *Ray v. 1650 Broadway Associates Inc.,* No. 16-CV-9858 (VSB), 2020 WL 5796203, at *3 (S.D.N.Y. Sept. 29, 2020) ("The parties and their counsel are in a unique position to assess the potential risks of litigation, and thus district courts often give weight to the fact that the parties have chosen to settle."). Accordingly, at the preliminary approval stage, the court "need only decide whether the terms of the Proposed Settlement are at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard." *Hill v. County of Montgomery,* No. 9:14-cv-00933 (BKS/DJS), 2020 WL 5531542, at *2 (N.D.N.Y. Sept. 15, 2020) (internal quotation marks and citations omitted).

At the final approval stage, the following factors will likely weigh in favor of granting final approval in determining whether the settlement agreement is fair, reasonable, and adequate:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

In assessing fairness, the court "examines both the negotiating process leading to the settlement, and the settlement's substantive terms." *In re Signet Jewelers Limited Securities Litig.,* No. 1:16-cv-06728-CM-SDA, 2020 WL 4196468, at *1 (S.D.N.Y. July 21, 2020) (citations omitted).

**B.  The Settlement Satisfies the Criteria for Preliminary Approval**

The relevant factors weigh in favor of Preliminary Approval. First, the Settlement was reached in the absence of collusion, and is the product of good-faith, informed, and arm's length negotiations by competent counsel. Furthermore, a review of the factors related to the fairness, adequacy, and reasonableness of the Settlement demonstrates that Settlement warrants Preliminary Approval.

Any settlement requires the parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay. Plaintiff believes that the claims asserted are meritorious and would prevail if this matter proceeded to trial. ESL argues that Plaintiff's claims are unfounded, denies any potential liability as well as Plaintiff's ability to certify a class, and up to the point of settlement indicated a willingness to litigate those claims vigorously. Given the risks, uncertainties, and litigation burdens, ESL agreed to the Settlement terms.

Ultimately, the Parties concluded that, on balance, the benefits of the Settlement outweigh the risks and uncertainties of continued litigation, as well as the attendant time and expenses

associated with contested class certification proceedings and possible interlocutory appellate review, completing merits discovery, pretrial motion practice, trial, and finally appellate review. Decl. ¶ 21.

### 1. This Settlement Is The Product of Good Faith, Informed, and Arm's Length Negotiations

"In evaluating the procedural fairness of a proposed settlement, the court must determine whether the settlement was 'achieved through arms-length negotiations by counsel with the experience and ability to effectively represent the class's interests.'" *Massrre v. Mullooly, Jeffrey, Rooney & Flynn LLP,* No. 19 Civ. 4654 (KAM) (VMS), 2020 WL 6321480, at *11 (E.D.N.Y. Aug. 28, 2020) (citing *Becher v. Long Island Lighting Co.,* 64 F. Supp. 2d 174, 178 (E.D.N.Y. 1999)). Particularly, courts examine the negotiating process leading up to the settlement. *D'Amato v. Deutsche Bank,* 236 F.3d 78, 85 (2d Cir. 2001). A strong initial presumption of fairness attaches to the proposed settlement if, as here, the settlement is reached after there has been discovery by experienced counsel and after arm's length negotiations. *Wal-Mart Stores, Inc.,* 396 F.3d at 116. Further, a neutral mediator's involvement in settlement negotiations also lends to a finding that the Settlement is procedurally fair. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,* 330 F.R.D. 11, 35 (E.D.N.Y. 2019).

The Settlement is the result of intensive, arm's length negotiations between experienced attorneys familiar with the legal and factual issues of this Action, with the assistance of a highly respected mediator whose guide such negotiations without undue pressure or collusion. Decl. ¶ 22. Furthermore, Class Counsel is particularly experienced in litigation, certification, trial, and settlement of nationwide consumer class action cases. *Id.* ¶¶ 6, 8. Class Counsel thoroughly investigated and analyzed Plaintiff's claims and engaged in briefing on ESL's motion to dismiss, and engaged in discovery and significant data and damage analysis, consulting an expert. *Id.* ¶¶ 7-8. Class Counsel was also well-positioned to evaluate Plaintiff's claims' strengths and weaknesses, and the appropriate basis upon which to settle them, by litigating similar claims in courts across the country. Thus, the settlement process was procedurally fair. *See Kirby v. FIC Restaurants, Inc.,* No. 5:19-CV-1306 (FJS/ML), 2020 WL 3501398, at * 3 (N.D.N.Y. June 29, 2020) (settlement

result of arm's length negotiations where attorneys were "well-versed in prosecuting wage and hour class and collective actions" and engaged a private mediator for a full-day mediation session).

### 2. The Facts Support a Preliminary Determination That The Settlement Is Fair, Adequate, and Reasonable

A preliminary review of the Settlement supports preliminary approval under Rule 23(e)(2), as amended effective December 1, 2018, and Second Circuit case law. As detailed below, the Settlement meets all of the Rule 23(e)(2) factors.

The Second Circuit has identified nine factors (the *Grinnell* factors) that should be considered in determining the substantive fairness of a proposed settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of the discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 454 (2d Cir. 1974), abrogated on other grounds by *Goldberger v. Integrated Res., Inc.,* 209 F.3d 43 (2d Cir. 2000). While the *Grinnell* factors apply directly to final approval, these factors are also considered a "useful guide" at the preliminary approval stage. *Am. Medical Ass'n v. United Healthcare Corp.,* No. 00 Civ. 2800(LMM), 2009 WL 1437819, at *3-4 (S.D.N.Y. May 19, 2009). And even after Rule 23 was amended to enumerate additional factors to consider in evaluating a proposed settlement, "[t]he Advisory Committee Notes to the 2018 amendments indicate that the four new Rule 23 factors were intended to supplement, rather than displace the[] '*Grinnell*' factors." *In re GSE Bonds Antitrust Litig.,* 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019). *See also In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. at 29. Importantly, "not every factor must weigh in favor of settlement, rather, the court should consider the totality of these factors in light of the particular circumstances." *Marroquin v. Champlain Valley Specialty of N.Y., Inc.,* No. 5:15-cv-00441

(MAD/TWD), 2016 WL 3406111, at *4 (N.D.N.Y. June 17, 2016) (citations omitted). The *Grinnell* factors weigh heavily in favor of Preliminary Approval.[2]

> **a.   The Risks of Establishing Liability and Damages Demonstrate That This Settlement Is Within the Range of Reasonableness in Light of All Attendant Risks of Litigation and Relative to The Best Possible Recovery**

Courts typically analyze the final two factors together: the range of reasonableness of settlement in light of the best possible recovery, and the range of reasonableness of the settlement fund in light of all the attendant risks of litigation. *See e.g., Beebe v. V&J National Enterprises, LLC,* No. 6:17-CV-06075 EAW, 2020 WL 2833009, at *7 (W.D.N.Y. June 1, 2020); *Godson v. Eltman, Eltman, & Cooper, P.C.,* 328 F.R.D. 35, 58 (W.D.N.Y. 2018); *Odom v. Hazen Transport, Inc.,* 275 F.R.D. 400, 412 (W.D.N.Y. 2011). "Determining whether a settlement is reasonable is not susceptible of a mathematical equation yielding a particularized sum." *In re Austrian & German Bank Holocaust Litig.,* 80 F. Supp. 2d 164, 178 (S.D.N.Y. 2000) (internal quotation and citation omitted). Rather, a settlement is within the "range of reasonableness" where it "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking litigation to completion." *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir. 1972). In making this determination, the court should compare the settlement amount with that of the best possible recovery in litigation. *Godson,* 328 F.R.D. at 58 (citing *In re Citigroup Inc. Sec. Litig.,* 965 F. Supp. 2d 369, 384 (S.D.N.Y. 2013)).

The Action concerns ESL's alleged unfair and misleading assessment and collection of Retry Fees and Sufficient Funds Fees on consumer's Accounts. This Settlement achieves Plaintiff's desired goal of compensating class members charged such fees during the Class Period. While Plaintiff's best case scenario is a 100% refund of the Relevant Fees, there was a substantial risk that Plaintiff would not achieve such a result, or any recovery at all. Prior to Settlement, ESL sought dismissal. Although that motion was denied (except as to the covenant and fair dealing claim), success on the merits is far from guaranteed. ESL argues the relevant Account agreements

---

[2] The sole *Grinnell* factor which does not favor settlement is the ability of the defendant to withstand a larger settlement; however, "this factor, standing alone, does not suggest that the settlement is unfair." *D'Amato v. Deutsche Bank,* 236 F.3d 78, 86 (2d Cir. 2001) (citing *In re Austrian and German Bank Holocaust Litig.,* 80 F. Supp. 2d 164, 178 n. 9 (S.D.N.Y. 2000)).

are unambiguous, and even if they were, extrinsic evidence resolves the ambiguity in its favor on whether the fees at issue are permitted. Thus, although Plaintiff believes she has a strong chance on the merits, Plaintiff could certainly fail to obtain class certification or lose at summary judgment or trial or on appeal. Decl. ¶ 26.

The Value of the Settlement represents approximately 44% of the Retry Fees and Sufficient Funds Fees allegedly wrongly charged to the Settlement Class, without the inherent litigation risks, a very fair and reasonable recovery. Decl. ¶ 17. Indeed, it is a very good result comparing the results in other similar cases. Decl. ¶ 25.

This range has been found to "reasonably balance[] the damages potentially recoverable by the plaintiffs with the genuine risks of continued litigation." *Odom,* 275 F.R.D. at 412 (finding settlement amount that was approximately one-third of the total damages recoverable by plaintiffs if they prevailed fully to represent a reasonable compromise); *Beebe,* 2020 WL 2833009, at *7 (holding a "$2.35 million settlement is reasonable where the potential recovery is $14.8 million," especially when taking into consideration the risks of litigation). Ultimately, however, "the fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Grinnell,* 495 F.2d at 455. Even in theory, a settlement amounting "to a hundredth or even a thousandth part of a single percent of the potential recovery" is passable. *Id.* at 455 n.2.

Indeed, the Settlement is a very good result by comparison to results in other overdraft cases, and either meets or exceeds the vast majority of court-approved recoveries in overdraft fee class actions nationwide. *See Roberts v. Capital One, N.A.,* Case No. 1:16-cv-04841-LGS, 2020 (S.D.N.Y. Dec. 1, 2020) (approving a cash fund representing approximately 35% of relevant overdraft fees alleged by plaintiff); *Bodnar v. Bank of Am., N.A.*, No. 14-3224, 2016 WL 4582084, at *4 (E.D. Pa. Aug. 4, 2016) (approving a cash fund of between 13%-48% of the maximum amount of damages they may have been able to secure at trial, and describing such a result as a "significant achievement" and outstanding"); *In re Checking Account Overdraft Litig.*, No. l:09-MD-02036-JLK, 2015 WL 12641970, at *7 (S.D. Fla. May 22, 2015) (approving $31,767,200 settlement representing approximately 35% of the most probable aggregate damages); *Hawthorne*

*v. Umpqua Bank*, No. 11-cv-06700-JST, 2015 WL 1927342, at *3 (N.D. Cal. Apr. 28, 2015) (approving $2,900,000 settlement for approximately 38% of what could have been obtained at trial); *In re Checking Account Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2013 WL 11319242, at *1 (S.D. Fla. Aug. 2, 2013) (approving $4,000,000 settlement for 25% of the most probable recoverable damages).

The success of Plaintiff's claims in future litigation turns on these and other questions that are certain to arise in the context her motion for class certification and at trial, as they have in other similar cases. The legal issues raised in this case have not been decided in the cases in which plaintiffs have sued financial institutions for assessing fees based on the specific contractual language.

Each of these risks, by itself, could easily have impeded Plaintiff's and the Settlement Class's success at trial. Under the circumstances, Plaintiffs and Class Counsel appropriately determined that Settlement outweighs the gamble of continued litigation. Decl. ¶¶ 21, 23-24, 26-28. Moreover, even if they prevailed at summary judgment and trial, any recovery could be delayed for years by appeals. "In assessing the adequacy of a settlement, a court must balance the benefits of a certain and immediate recovery against the inherent risks of litigation." *In re Med. X-Ray Film Antitrust Litig.,* No. 93-CV-5904, 1998 WL 661515, at *11 (E.D.N.Y. Aug. 7, 1998). This guaranteed and immediate recovery outweighs the consequential risks of continued litigation, and is particularly true given the small amount of damages typically available in consumer class action litigation. *See Garland v. Cohen & Krassner,* No. 08-CV-4626 (KAM) (RLM), 2011 WL 6010211, at *7 (E.D.N.Y. Nov. 29, 2011). The Settlement provides substantial relief without further delay. Decl. ¶ 28.

Further, as discussed above, the Settlement is the product of arm's-length negotiations conducted by the Parties' experienced counsel with the assistance of a well-respected mediator through two mediation sessions and additional negotiation thereafter. As a result, the Parties have reached a Settlement that Class Counsel believes to be fair, reasonable, and in the Settlement Class's best interests. Class Counsel's assessment in this regard is entitled to considerable deference. The $1,830,758.36 Value of the Settlement is fair and reasonable in light of ESL's

defenses, and the challenging and unpredictable litigation path in the absence of settlement. *Id.* ¶¶ 24-25.

### b.  The Expense, Complexity, and Likely Duration of Further Litigation

The proposed Settlement provides Settlement Class Members with a substantial, guaranteed, and immediate recovery that would typically take several years of continued litigation and significant expense to achieve. "[M]ost class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *Frank v. Eastman Kodak Co.,* 228 F.R.D. 174, 184-85 (W.D.N.Y. 2005). Indeed, where settlements of such complex actions are favored by courts, this factor "weighs heavily" in the court's analysis in evaluating the reasonableness of a class action settlement. *In re Austrian and German Bank Holocaust Litig.,* 80 F. Supp. 2d at 174.

Recovery by any means other than Settlement would require additional years of litigation here and in the Second Circuit. This delay would inevitably force the Settlement Class to wait longer for recovery, reducing its value. At a minimum, Class Counsel would anticipate continued discovery disputes regarding ESL's electronically stored information, ongoing document review, further involvement with Plaintiff's damages expert to analyze and calculating classwide damages, and several depositions relating to ESL's fee policies and practices. The anticipated costs associated with litigation tasks of this nature weigh in favor of finding the Settlement is presumptively fair. *See Frank,* 228 F.R.D. at 185; *see also Odom,* 275 F.R.D. at 410.

Although Plaintiff is confident that the Action is with merit and that the class would ultimately prevail, the aforementioned risks of extended litigation and its given uncertainties, such as failing to achieve class certification before trial on the merits is very much palpable. *See Godson,* 328 F.R.D. at 55 (acknowledging pretrial motions, such as summary judgment, and the potential for subsequent appeals will produce delay of resolution and undermine value of potential recovery); *Garland,* 2011 WL 6010211, at *7 ("If the Settlement is not approved, protracted discovery and litigation will likely ensue."). Thus, the proposed Settlement is the best vehicle for the Settlement Class to promptly and efficiently receive the relief to which they believe they are entitled.

### c.   The Risk of Maintaining Class Action Status Throughout Trial

It is uncertain that this Action would be certified in the absence of settlement: if the Settlement were disapproved, ESL would likely oppose class certification, creating an "appreciable risk to the class members' potential for recovery and even if plaintiff[] could obtain class certification, there could be a risk of decertification at a later stage." *Godson,* 328 F.R.D. at 57 (citations and internal quotation marks omitted). And given ESL's defense of this Action thus far, ESL would also likely appeal any grant of class certification. Indeed, while Plaintiff might prevail, "the risk that the case might not be certified is not illusory and weighs in favor of Class Settlement." *Frank,* 228 F.R.D. at 186.

### d.   The Extent of Discovery Completed and The Stage of The Proceedings

This factor does not require the Court to find the parties have engaged in extensive discovery. *Plummer v. Chemical Bank,* 668 F.2d 654 (2d Cir. 1982). Rather, it inquires "whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiff's causes of action of purposes of settlement." *In re Bear Stearns Co. Sec. Derivative and ERISA Litig.,* 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012). Indeed, this factor can be satisfied even where only informal discovery occurred. *See In re Austrian and German Bank Holocaust Litig.,* 80 F. Supp. 2d at 176.

Here, Class Counsel has devoted substantial time and resources to investigating, litigating, and resolving this case. Decl. ¶¶ 7-8, 15. Plaintiffs settled the Action with the benefit of Class Counsel's years of experience litigating cases like this one, discovery, and data and damage analysis. *Id.* ¶ 6, 8, 22, 24. Due to their extensive experience, the Parties' counsel are well aware of the relative strengths and weaknesses of their respective cases, informing the negotiations between counsel. They confidently evaluated the likelihood of success at class certification and trial, the risks of continued litigation, and the benefits of settlement. Discovery to date enabled Class Counsel to understand Defendant's potential exposure, as well as to provide their expert sufficient data to analyze a viable classwide damages calculation. This information allowed the Parties to estimate that the Value of the Settlement represents a recovery of approximately 44% of

the most probable damages without further risks. Thus, "while this case is still in the relatively early stages of discovery, the information exchanged and analyzed has been sufficient to" inform the negotiations between counsel and to allow them to evaluate, with confidence, the strengths and deficiencies of Plaintiff's claims, and to craft a fair settlement structure for the Class. *Frank,* 228 F.R.D. at 185; *Odom,* 275 F.R.D. at 411.

### e.   The Effectiveness of Distributing Relief, The Release and Equitable Treatment of Class Members

Various provisions regarding the adequacy of the Settlement's relief under Fed. R. Civ. P. 23(e)(2)(C) also favor preliminary approval. For example, Rule 23(e)(2)(C)(ii) examines "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." The Settlement's plan for allocation of the Settlement benefits is straightforward: Settlement Class Members will receive a cash Payment based on a pro rata basis and upon a logical calculation for each member of the Sufficient Funds Fee Class and/or Retry Fee Class. Agreement, at ¶ 72(d). Further, the Settlement's plan for distribution is efficient in that it accounts for whether the Settlement Class Member is a Current Account Holder or Past Account Holder. *Id.* Pro rata allocation and distribution plans of this nature have been found to satisfy the Rule. *See e.g., In re Payment Card,* 330 F.R.D. at 41 (settlement that provided each claimant with pro rata share of settlement fund based on interchange fees paid attributable to their transactions to be an effective form of relief distribution); *In re Visa Check/Mastermoney Antitrust Litig.,* 297 F. Supp. 2d 503, 519 (E.D.N.Y. 2003) (fair and reasonable allocation plan where class members received a monetary award "directly proportional to their debit and credit purchase volume").

Rule 23(e)(2)(D) asks whether class members are treated equally, and such consideration "could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23, Advisory Committee's note on 2018 amendment. Here, because the Settlement distributes payment on a pro rata basis, Settlement Class Members will be treated equitably. *In re GSE Bonds,* 414 F. Supp. 3d

at 698-99; *In re Payment Card,* 330 F.R.D. at 47. Further, because each Settlement Class Member will be required to give the same Releases, which uniformly releases ESL from all claims relating to the subject matter of the Action during the Class Period, and does not affect the apportionment of relief to Settlement Class Members, this factor favors preliminary approval. *In re GSE Bonds,* 414 F. Supp. 3d at 699.

### f.   The Terms of Any Proposed Award of Attorneys' Fees

"Federal courts have long recognized that a lawyer whose efforts create a common fund may recover a reasonable fee from the fund as a whole." *Kommer v. Ford Motor Co.,* No. 1:17-CV-0296 (LEK/DJS), 2020 WL 7356715, at *5 (N.D.N.Y. Dec. 15, 2020). Under the Agreement, Class Counsel are entitled to request, and ESL will not oppose, an attorneys' fee award of up to 33.33% of the Value of the Settlement, as well as reimbursement of litigation costs incurred in the Action. Agreement at ¶ 72(a). This requested fee award is well within the accepted range in this Circuit. *See Stefaniak v. HSBC Bank U.S.A., N.A.,* No. 1:05-CV-720 S, 2008 WL 7630102, at * (W.D.N.Y. June 28, 2008) ("Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit."); *Velez v. Novartis Pharms. Corp.,* No. 04-CV-9194, 2010 WL 4877852, at *21 (S.D.N.Y. Nov. 30, 2010) ("District courts in the Second Circuit routinely award attorneys' fees that are 30 percent or greater."); *Odom,* 275 F.R.D. at 412 (attorneys' fees representing 32.6% of settlement fund held to be reasonable);. However, such award remains subject to this Court's approval; accordingly, Plaintiff requests that the Court find that this factor will favor granting final approval and should reserve a full analysis of this factor at the final approval stage. *See Kirby,* 2020 WL 3501398, at * 4.

In light of each of these factors, this Court should find that the Settlement warrants Preliminary Approval.

### C.   Certification of the Settlement Class Is Appropriate

For settlement purposes, Plaintiff respectfully requests and Defendant does not oppose, that the Court certify the Settlement Class. In approving provisional class certification, "because the litigation is being settled, rather than litigated, the Court need not consider the manageability issues that litigation would present." *Berkson v. Gogo LLC,* 147 F. Supp. 3d 123, 159 (E.D.N.Y.

2015); *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 620 (1997). Further, applying the December 2018 amendments to Rule 23(e)(1), the Court should conclude that it is likely to certify the Settlement Class and approve the Settlement as fair, adequate, and reasonable. Certification will allow notice of the proposed Settlement to issue to the Settlement Class to inform them of the Settlement's existence and terms; of their right to be heard on its fairness; of their right to opt-out and/or object; and of the date, time, and place of the Final Approval Hearing. *See Manual for Compl. Litig.,* §§ 21.632, 21.633.

Certification under Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the Settlement Class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the Settlement Class; and (4) the representative parties will fairly and adequately protect the interests of the Settlement Class. Rule 23(b)(3) certification is appropriate if (1) questions of law or fact common to the class members predominate over individual issues of law or fact; and (2) if a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Numerosity. Numerosity is readily satisfied here because the Settlement Class consists of over 40,000 ESL members, and joinder of all such persons would be impracticable. *See* Fed. R. Civ. P. 23(a)(1); *see also Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir. 1995) (noting that "numerosity is presumed at a level of 40 members"); *In re Beacon Assocs. Litig.,* 282 F.R.D. 315, 339 (S.D.N.Y. 2012) ("Because joinder of the thousands of members of the class would obviously be impracticable, we conclude that numerosity is satisfied.").

Commonality. "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 389-90 (2011) (citation omitted). "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Johnson v. Nextel Commc'ns Inc.,* 780 F.3d 128, 137 (2d

Cir. 2015). Here, commonality is easily satisfied. There are multiple questions of law and fact—centering on ESL's alleged systematic practices of assessing Sufficient Funds Fees and Retry Fees—that are common to the Settlement Class, alleged to have injured all Settlement Class Members in the same way, and would generate common answers central to the viability of the claims were the Action proceed to trial. *See Cohen v. J.P. Morgan Chase & Co.,* 262 F.R.D. 153, 158 (E.D.N.Y. 2009) (commonality satisfied where plaintiff's and class's claims arose from common course of conduct by Chase bank in charging post-closing fee and common questions of law and fact included whether such fee violated New York's consumer protection statute and whether plaintiff and the class was damaged).

Typicality. Since the typicality requirement "tend[s] to merge" with that of commonality, *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 157 n.13 (1982), for similar reasons, Plaintiff also satisfies Rule 23(a)(3) typicality. Typicality "is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011) (citation omitted). Importantly, this factor "does not require that the factual background of each named plaintiff's claim be identical to that of all class members; rather, it requires that the disputed issue of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." *Hill,* 2020 WL 5531542, at *3. Plaintiff's claims are typical of the absent Settlement Class members because they were subjected to the same ESL practices leading to the assessment of fees, suffered the same injuries, and will benefit equally from the relief in the Settlement.

Adequacy. Generally, the adequacy factor inquires "whether: 1) plaintiff's interests are antagonistic to the interest of the other members of the class, and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 222 F.3d 52, 60 (2d Cir. 2000). Plaintiff's interests are coextensive with, not antagonistic to, the Settlement Class's interests. Plaintiff and the absent Settlement Class Members have the same interests in the relief afforded by the Settlement, and the absent Settlement Class Members have no diverging interests. Decl. ¶ 34. Further, Plaintiff is represented by qualified and

competent counsel who have extensive experience and expertise prosecuting complex class actions, including consumer actions similar to the instant case. *Id.* ¶¶ 6, 8. Class Counsel has devoted substantial time and resources to this Action, and will vigorously protect the interests of the Settlement Class. *Id.* ¶ 29.

Predominance. Certification of the Settlement Class is further appropriate because the questions of law or fact common to Settlement Class members predominate over any questions affecting only individual members. *See* Fed. R. Civ. P. 23(b)(3). Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation" and is generally "satisfied when (1) resolution of any material legal or factual questions can be achieved through generalized proof, and (2) these common issues are more substantial than the issues subject only to individualized proof." *Hill,* 2020 WL 5531542, at \*4; *see also In re Visa,* 280 F.3d at 136. This is easily satisfied here because liability questions common to all Settlement Class Members substantially outweigh any possible issues that are individual to each Settlement Class Member. Decl. ¶ 32. To illustrate, each Settlement Class Member's relationship with ESL arises from Account agreements that are the same or substantially similar in all material and relevant aspects to the other Settlement Class members' agreements, and the Retry Fees and Sufficient Funds Fees were charged based on the same set of circumstances alleged to be in breach of the Settlement Class members' form agreements.

Superiority. As far as Plaintiff's Counsel is aware, there are no pending related cases. *See* W.D.N.Y. Local Rule 23(d)(4). Moreover, the above-referenced case would resolve thousands of claims in one action; this is far superior to individual lawsuits because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3).

For each of these reasons, the Court should certify the Settlement Class.

**D.  The Proposed Notice Program Is Constitutionally Sound**

Rule 23(e)(1)(B) requires that notice of the Settlement be directed "in a reasonable manner to all class members who would be bound by the proposal[.]" In comporting with the Due Process Clause and the Federal Rules, "[t]here are no rigid rules," rather, "the settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the

23

options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc.,* 396 F.3d at 113-14 (citations omitted). A proposed notice plan typically satisfies this standard where it provides class members information regarding:

> (1) the nature of the litigation and claims asserted; (2) the preliminarily approved Settlement Agreement and its terms, including the formula used to calculate individual settlement payments; (3) the claim form; (4) the options available to each member of the class or collective; (5) the consequences of each option; (6) how they may exercise their options; (7) the deadlines they have to make their decisions; and (8) the final settlement fairness hearing date.

*Kirby,* 2020 WL 3501398, at *3.

The Notice Program satisfies these content requirements. It is designed to reach a high percentage of the Settlement Class by sending direct Email Notice or Postcard Notice to Settlement Class members, and exceeds the requirements of constitutional due process. Fed. R. Civ. P. 23(c)(2)(B) and 23(e)(1). Thus, Plaintiff respectfully requests that the Court approve the Notice Program and the form and content of the proposed Notices attached to the Agreement as ***Exhibits 1*** and ***2***.

### E.  Notice Is Satisfied Pursuant to the Class Action Fairness Act ("CAFA")

CAFA requires that settling defendants give notice of a proposed class action settlement to appropriate state and federal officials, and such notice must supply all of the information and documents set forth under 28 U.S.C. § 1715(b)(1)-(8). ESL, through the Settlement Administrator, will serve CAFA Notice within the proper period. Agreement ¶ 58(l).

### F.  Plaintiff's Counsel Should Be Appointed Class Counsel

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). The Court must consider counsel's work in identifying or investigating potential claims; experience in handling class actions or other complex litigation, and the types of claims asserted in the case; knowledge of the applicable law; and resources committed to represent the class. Fed. R. Civ. P. 23(g)(1)(A)(i-iv).

As illustrated above, Class Counsel diligently investigated and litigated Plaintiff's claims and the feasibility of class certification, and have and will continue to devote substantial time and

resources to this litigation. Class Counsel have extensive experience with similar class action litigation and have been appointed class counsel in many class actions, including several banking fee cases like the instant case. As such, Class Counsel have in-depth knowledge of the laws applicable to the Settlement Class members' claims and class certification. Accordingly, the Court should appoint Plaintiff's counsel to serve as Class Counsel for the proposed Settlement Class pursuant to Rule 23(g).

IV.  **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court: (1) grant Preliminary Approval of Class Action Settlement; (2) certify for settlement purposes only the proposed Settlement Class pursuant to Federal Rule of Civil Procedure 23; (3) appoint Plaintiff as Class Representative; (4) approve the Notice Program set forth in the Agreement and approve the form and content of the Notices, attached to the Settlement Agreement as Exhibits 1 and 2; (5) approve the opt-out and objection procedures set forth in the Agreement; (6) stay the Action against ESL pending Final Approval of Settlement; (7) appoint Jeff Ostrow and Jonathan Streisfeld of Kopelowitz Ostrow P.A.; Jeffrey Kaliel and Sophia Gold of Kaliel PLLC; and Andrea Gold of Tycko & Zavareei LLP as Class Counsel; and (8) schedule a Final Approval Hearing no sooner than the week of July 12, 2021 (if convenient for the Court). For the Court's convenience, Plaintiff attaches hereto as *Exhibit C* a Proposed Order Preliminarily Approving Class Action Settlement and Certifying Settlement Class and setting forth the various applicable deadlines referenced herein and outlined in the Agreement.

Dated: February 16, 2021                      Respectfully submitted,

                                              **REESE LLP**

                                              */s/Michael R. Reese*
                                              Michael R. Reese
                                              100 West 93rd Street, 16th Floor
                                              New York, New York 10025
                                              Telephone:  (212) 643-0500
                                              Facsimile:  (212) 253-4272
                                              Email:  *mreese@reesellp.com*

                                              *Liaison Counsel*

                                              **KALIEL PLLC**
                                              Jeffrey D. Kaliel, Esq.
                                              Sophia G. Gold, Esq.
                                              1875 Connecticut Ave. NW, 10th Floor
                                              Washington, DC 20009

                                              **TYCKO & ZAVAREEI LLP**
                                              Andrea Gold
                                              1827 L St. NW, Suite 1000
                                              Washington, DC 20036

                                              **KOPELOWITZ OSTROW P.A.**
                                              Jeff Ostrow, Esq.
                                              Jonathan M. Streisfeld, Esq.
                                              1 West Las Olas Blvd, Suite 500
                                              Fort Lauderdale, Florida 33301

                                              *Proposed Co-Lead Class Counsel*